(44 South. 276.)

No. 16,370.

### QUEEN v. SCHWANN et al.

(May 13, 1907.   Rehearing Denied June 28, 1907.)

MASTER AND SERVANT—TORTS OF SERVANT—LIABILITY OF MASTER.

Plaintiff, an overseer on a sugar plantation, got into a difficulty with a laborer in the fields, and was shot in the arm. Plaintiff sued the common master for damages, alleging that the servant, a man of bad character, after having been discharged by the overseer, was re-employed by the master, and that the damage was occasioned by the servant in the exercise of the functions in which he was employed. There was judgment in favor of the defendant, and the plaintiff appealed. *Held,* that, on the evidence, the verdict was sustainable on the ground that the overseer provoked the difficulty, and on the further ground that the alleged dangerous character of the servant was not known to the master, and, finally, that the act which occasioned the damage was not within the scope of the servant's employment.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 1225, 1230, 1266.]

(Syllabus by the Court.)

Appeal from Twenty-Third Judicial District Court, Parish of St. Mary; Albert Campbell Allen, Judge.

Action by Benjamin F. Queen against William Schwann and others. Judgment for defendants, and plaintiff appeals. Affirmed.

Henry D. Smith, for appellant. Hubert Marion Ansley and Henry Mayer, for appellees.

LAND, J. During the years 1901 and 1902 plaintiff was employed as an overseer on the defendants' Germania plantation in the parish of St. Mary. In November, 1902, plaintiff was badly wounded in his left arm by a pistol shot fired by one Adolph Reed, a laborer on said plantation.

This suit was filed in July, 1903, to recover $15,000 damages from the defendants, the owners of the Germania plantation, on the theory that as employers they were responsible for the tort of the said Adolph Reed.

The petition represents: That the plaintiff as manager had employed the said Reed as a laborer on said plantation. That on November 24, 1902, plaintiff discharged the said Reed for bad conduct and for just cause, and that thereupon the said laborer left the said fields, and his employment was terminated.

That the said Reed at once sought out the defendant Schwann, acting for himself and his co-owners, and that then and there the said Schwann re-employed said Reed as a laborer, and directed him to resume work in the fields.

That plaintiff, not being aware of the said re-employment of said Reed, and finding him in the fields, ordered him off, and in reply the said Reed, without any cause or provocation whatsoever, drew a pistol, and shot plaintiff in the left arm.

That the said Reed was at the time the servant of the defendants, and that his conduct was within the scope of his employment, and the damage complained of was done in the exercise of the functions in which said servant was employed.

That plaintiff has been damaged in the sum of $10,000 for pain, suffering, loss of use of arm, medical expenses, etc., and in the further sum of $5,000 punitive damages arising out of the conduct of the said Schwann in the premises.

Defendants pleaded several exceptions and the general issue.

The cause was tried before a jury, and the result was a mistrial. On the second trial there was a verdict for the defendants. From a judgment pursuant to the verdict, the plaintiff has appealed.

Reed and other laborers were not hired by the plaintiff, but their services were secured for the grinding season through an agent in the usual manner. Reed labored on the place several weeks, and no fault was found with his work or conduct. He was in one of the gangs engaged in cutting cane. It appears from the testimony of the plaintiff himself that Reed and two other cutters on Saturday refused to obey his order to load carts with cane, and started to leave the fields, and that thereupon the plaintiff told them not to come back any more, and to go to the house and see Mr. Schwann. The negroes went to see Mr. Schwann, and on the next Monday morning were found by the plaintiff at work cutting cane in the fields. Plaintiff rode up and spoke to Reed, saying:

"What are you doing here? Did I not tell you not to come back?"

Reed did not reply, and thereupon plaintiff raised a small stick which he was holding in his right hand. Reed dodged his head, and ran, crying:

"Boss, don't you hit me."

Both parties were armed, and both fired their pistols. Plaintiff testified that Reed was the first to draw and fire. Walker, one of the three negroes who had been sent from the field on the Saturday previous, testified that Reed was the first to "pull his gun." Three negroes who were working in the same gang with Reed and Walker testified that plaintiff was the first to draw and fire. Reed was indicted for shooting with intent to murder, and pleaded guilty to shooting with intent to kill. He was sent to the penitentiary for two years.

Plaintiff did not inform Schwann of the trouble with the three negroes on the Saturday in question. According to Schwann's testimony, the three negroes came and told him that Queen had run them off the place. They wanted their pay, but Schwann told them to stay until Monday, and he would pay them off. Schwann denied that he ordered the negroes to resume work on the next Monday. Walker's testimony was taken under commission, and on this point is substantially that Schwann said that he would pay the three men on Monday, and told them to stay until Monday and go back to the field and cut cane. Two witnesses testified that Schwann had admitted that he had sent the men back to cut cane. From Walker's testimony the inference is that he and Reed were to work in the field until paid off on the next Monday.

The plaintiff and his employer had no conference whatever on the subject of the conduct or discharge of these three laborers. Plaintiff made no inquiry, but, assuming that the men had on their own motion returned to work in disobedience to his orders, proceeded to vindicate his authority by forcing Reed and Walker to leave the field. Plaintiff's language and actions were sufficiently minatory to induce Reed to believe that he was about to be beaten with the raised stick in the hands of the plaintiff, who at the same time had a pistol hanging from his saddle.

The jury may well have found that the plaintiff had provoked the difficulty. Although he had sent these three laborers to Schwann, the common master, the plaintiff did not trouble himself to inquire what disposition had been made of the matter. Finding these same laborers at work in the fields on the next Monday, the plaintiff did not ask for an explanation, but proceeded at once to force Reed to leave the field. The autocratic power claimed by plaintiff to discharge laborers without consulting his employer was emphatically denied by the latter, and we may say was in itself an extraordinary assumption of exclusive authority. The evidence does not show that the three men were discharged and then re-employed by the master. These laborers were permitted to remain until they could be paid off, and, even if the master had determined to retain their service

permanently, he would have been well within his rights.

All three of these servants had declined to obey the order of the overseer to change their work. This was the cause of their offending. Yet we find that plaintiff's case is pitched on the premise that Reed was a bad and dangerous servant, and that his re-employment by the master was an act of criminal negligence, causing the injury complained of. The petition alleges that this dangerous servant was employed by the plaintiff. This is not true in fact, as the laborers during the grinding season were all hired through outside agents. No one but plaintiff testified as to the dangerous character of Reed. Plaintiff never informed his employer that Reed was a bad man, and that his presence was detrimental to the best interest of the plantation. Schwann did not know anything about Reed's supposed bad character. Reed had been on the place several weeks, and had conducted himself properly. His only misconduct, as shown by the evidence, was his refusal to obey the orders of the plaintiff, as already stated. Two of his fellow servants did likewise. Such conduct was a breach of discipline, which justified their discharge, but did not put them in the category of dangerous men. The master knew of this fault, common to the three servants, but had no reason to believe that either of them was of a dangerous character.

Assuming that these three men were ordered by the master to remain on the plantation and to resume their work on the next Monday, we do not see on what legal principles the master can be held responsible for the consequences of the difficulty between the plaintiff and Reed. We do not think that there is any basis in the evidence for the contention of plaintiff that the defendant Schwann is responsible in damages because he re-employed a notoriously bad negro. The character of the man was better known to the plaintiff than to Schwann, who had no reason to believe that the retention of Reed on the plantation would endanger the safety of the overseer or of any other person on the premises.

It is patent that the shooting of the plaintiff by Reed was not within the scope of the latter's employment, the nature of which did not authorize the servant to use force against any person. 20 A. & E. Ency. Law (2d Ed.) p. 171; Ware v. Barataria, 15 La. 169, 35 Am. Dec. 189; Etting v. Bank, 7 Rob. 459; LeBreton v. Kennedy, 27 La. Ann. 432; Dyer v. Rieley et al., 28 La. Ann. 6; Williams v. Pullman Palace Car Co., 40 La. Ann. 88, 3 South. 631, 8 Am. St. Rep. 512; Lafitte v. Railroad Co., 43 La. Ann. 36, 8 South. 701, 12 L. R. A. 337; Graham v. Railroad Company, 47 La. Ann. 1657, 18 South. 707, 49 Am. St. Rep. 436. Under article 2320 of the Civil Code the responsibility of the master attaches for damage occasioned by the servants "in the exercise of the functions in which they are employed." The employment of Reed did not contemplate an assault on the overseer, and the assault was not such an act as might have been done properly in the employer's name. Cooley on Torts, 536.

Judgment affirmed.