(81 South. 706)

No. 22974.

GODCHAUX v. TEXAS & P. RY. CO. et al.

(March 3, 1919.    Rehearing Denied May 5, 1919.)

*(Syllabus by Editorial Staff.)*

RAILROADS ⚖=281(1) — LIABILITY FOR ASSAULT OF AGENT—SCOPE OF EMPLOYMENT.

Where a railway company's station agent, who was also employed as express agent, attacked one calling for a shipment, against whom the agent had a grudge arising from dealings as agent, merely because the caller rebuked him for profanity, the railway and the express company were not liable for the assault; it not having been in the scope of the agent's employment.

Appeal from Sixteenth Judicial District Court, Parish of St. Landry; B. H. Pavy, Judge.

Action by Leopold Godchaux against the Texas & Pacific Railway Company and the Wells Fargo & Co. Express. From a judgment for plaintiff, defendants appeal. Judgment annulled, plaintiff's demand rejected, and suit dismissed.

Hunter C. Leake and Arthur A. Moreno, both of New Orleans (T. B. Harrison, Branch P. Kerfoot, and Chas. W. Stockton, all of New York City, of counsel), for appellant Wells Fargo & Co. Express.

Howe, Fenner, Spencer & Cocke, of New Orleans, and William H. Peterman, of Alexandria, for appellant Texas & P. Ry. Co.

R. Lee Garland, of Opelousas, for appellee.

O'NIELL, J.   The defendants appeal from a judgment against them, in solido, for $1,500 damages for personal injuries inflicted upon plaintiff, who was abused and assaulted and beaten by an agent of the defendant companies.

The principal defense is that the agent, though employed at the time as station agent of the railway company and as express agent of the express company, was not acting within the scope of his employment when, in a personal difficulty, he assaulted and beat plaintiff.

The offense committed by the agent was outrageous, according to the facts admitted in the pleadings. He was in the prime of life and of great physical strength. Plaintiff was 73 years of age, and his right arm was crippled. He was a prominent farmer and business man, residing in the vicinity of the railroad station, and an extensive patron of the railroad and express company. He had lived in the community many years and enjoyed a good reputation for peace and quiet and gentlemanly deportment. On the occasion of the difficulty he had called at the railroad station, accompanied by a negro farm hand, to transact business with the agent, in the latter's capacity both as railroad agent and express agent. The business with the railroad company pertained to a shipment of cotton and cotton seed. The business with the express company was to receive a pair of cotton scales that had come by express. When plaintiff asked the agent for the express matter, the latter was busy with his telegraph instrument, receiving a dispatch about the arrival of a train, and having orders from the train dispatcher to remain at the key. The agent therefore

replied to plaintiff that, though the scales were in the warehouse, he was then too busy to deliver them, but would do so in a few moments. After a short while the agent arose and asked plaintiff if he had a man to carry the scales. The colored man, Henry, appeared, and the agent said:

"Come on, Henry, let's get the damned scales out, while I have a few minutes to spare; G— d— it, hurry."

The three men were then going through or across a passageway from the agent's office to the warehouse, and plaintiff replied to the agent's profanity that there was no occasion for his cursing. It does not appear that plaintiff's remarks were impolite, except in the opinion of defendants' agent, who resented being reproved by plaintiff. Without further provocation, the agent immediately cursed and assaulted plaintiff, and knocked him down and beat him mercilessly. The assault and beating occurred on the premises occupied by both defendant companies, in the passageway between the agent's office and the warehouse. When plaintiff arose from the floor and was hurrying away, he said something to the effect that his sons would get even with the agent, to which the latter replied, according to his own testimony, that he didn't "give a G— d— for the whole s— of a b— outfit," and, again rushing upon plaintiff, he knocked him down again, and beat and kicked him until he was near senseless, when a bystander came and rescued the old man.

The evidence shows that the agent had a pent-up animosity of long standing against the plaintiff, that had arisen from a series of quarrels over business transactions that plaintiff had had with the defendant companies, in which the agent had acted within the scope of his employment. The outburst of temper and rage on the part of the agent was only an explosion of that pent-up animosity, having little or no immediate provocation. In a sense, therefore, the tort committed by the agent arose from and out of the business that he had authority to conduct for the defendant companies, and he was acting within the scope of his employment up to the instant when, in a burst of passion, he committed the assault.

It is not enough, however, to support the doctrine of respondeat superior, that the quarrel that resulted in the tort committed by the servant arose from and out of the business which he had authority to transact, and that he was acting within the scope of his employment at the moment when he stepped aside from the business of his master to commit the wrongful act on his own behalf and without regard for the business of the master. The responsibility of the master for a tort committed by his servant does not depend upon whether the tort was committed in the *course* of the employment; the test is whether the tort was committed within the *scope* of the employment. The doctrine of the common law is the same as the rule expressed in the Civil Code, viz.: Masters are answerable for the damages occasioned by the fault of their servants, "in the exercise of the functions in which they are employed." R. C. C. arts. 2315, 2317, 2320. The principle is defined clearly enough. The only trouble is in applying the rule to the facts in each case; for it is only a question of fact whether, in a given case, a tort that has been committed in the course of a servant's employment was within the scope of his employment or authority, either express or implied.

In this case, for example, if it had been within the scope of the agent's authority or employment to eject a disturber from the employer's premises, the employer would be responsible for the agent's wrongful or excessive manner of exercising the authority. There is neither allegation nor proof that the agent, in this case, had authority to serve as a police officer, or peace officer, or,

in any circumstance, to eject any one from the employer's premises. The only question is whether the wrongful act of the agent was merely an excessive manner of performing a duty within the scope of his employment, or so far exceeded the scope of the employment as to be entirely beyond contemplation on the part of the employer.

It would serve no good purpose to select from the many adjudged cases the one best fitted to this case in point of fact, and decide accordingly. It is better to adhere to a fixed principle, which we think has been closely observed in the jurisprudence of this court on the subject. Our analysis of the facts of each case cited in the arguments and briefs discloses that the decisions relied upon by plaintiff are in accord with those cited by defendants.

Counsel for plaintiff refer to the rulings in three cases decided recently viz.: Gann v. Great Southern Lumber Co., 131 La. 400, 59 South. 830, Serio v. American Brewing Co., 141 La. 290, 74 South. 998, L. R. A. 1917E, 516, and Matthews v. Otis Manufacturing Co., 142 La. 88, 76 South. 249.

In Gann v. Great Southern Lumber Co. it was held that plaintiff's petition presented a cause of action for damages for the killing of her husband by the servants of the defendant company, because of the allegation that the servants were employed by the defendant company to serve as peace officers of an unincorporated settlement, on the property of the defendant company, and that the servants were acting within the scope of their employment, "and were governed solely by the instructions received from said company," when they committed the homicide. The decision was only an affirmance of the doctrine, now well settled, that the master is answerable in damages for an injury resulting from his servant's willful and deliberate selection of an illegal method of performing a duty that would be, if proper-

ly performed, within the scope of his employment. The ruling is not applicable here, because the duties which the agent was employed to perform, in this case, were not like those of a peace officer, and because the tort he committed was not an illegal method of doing what he was employed to do; the tort he committed was entirely beyond the scope of his authority or duties.

The ruling in Mrs. Gann's Case was cited with approval in Vincent and Wife v. Morgan's La. & T. R. R. & S. S. Co., 140 La. 1027, 74 South. 541, Ann. Cas. 1918C, 1193, where the defendant was held liable in damages for a tort committed by a servant "employed by defendant to watch its property and protect it from trespassers and thieves"; the employé having, while acting "in the discharge of the functions for which he was employed," fired a pistol into a gang of boys who were throwing rocks at defendant's railroad train, and shot and killed plaintiffs' son. That decision is not applicable here, because the act of the servant, in the case cited, was merely a reckless manner of doing what he was employed to do properly—protect the master's property against trespassers. That feature of the case was emphasized in an expression of the court in the concluding paragraph of the opinion on the subject, viz. that the homicide was committed in furtherance of the purpose of the servant's employment, and, said the court:

"Moreover, in this case, knowing what its servant had done, and that his act had resulted in the taking of a human life, the master ratified and approved that act."

On the contrary, in the case before us, plaintiff demanded, after the assault, that the agent be removed from the railroad station, and the defendants promptly complied with the request.

In Serio v. American Brewing Co. plaintiff was allowed damages for being bitten by a vicious dog kept on defendant's premises

by an employé, the foreman in charge of the bottling works, of the defendant company. The decision was, not that the keeping of a dog on defendant's premises was within the scope of the foreman's employment, but that those who were vested with the corporate authority were charged with knowledge that the dog kept on the premises, with the approval of the agent whom they had placed in charge of the premises, was a dangerous animal and threatened injury to innocent people. The doctrine of respondeat superior played little or no part in the case, in view of the provisions of the Civil Code (article 2317) that every person is responsible for the damage occasioned by the act of a thing which he has in his custody, and (article 2321) that the owner of an animal is answerable for the damage it has caused. The fact that the title or ownership of the animal was vested, not in the defendant brewing company, but in the individual employé, was considered a matter of no importance; for the fault consisted in allowing the dangerous animal to remain nearly two years on the premises, and that fault was imputed directly to the officers vested with the corporate authority, for their failure to observe and do away with the dangerous animal.

In Matthews v. Otis Manufacturing Co. it was held that plaintiff's petition presented a cause of action for damages for a tort committed by a servant of the defendant company, because of the allegations that the servant was employed as foreman of defendant's mill, with authority to discharge men employed under him; that plaintiff was so employed as a mill hand; that, while acting "within the scope of his authority and in the course of his employment," the foreman ordered plaintiff to do some dangerous work without safe appliances, which plaintiff refused to do; that thereupon the foreman discharged plaintiff and ordered him to leave the mill; and that, while plaintiff was preparing to obey the order, the foreman, "with a view of dismissing petitioner from the employ of defendant and expelling him from the premises, struck petitioner on the top of the head with a large block of wood," etc. The tort committed by the servant was therefore, according to the allegations of the petition, only an excessive manner of doing what the foreman was authorized to do properly—discharge an employé for cause and expel him from the employer's premises. The ruling in that case was not a departure from the rule that the master is not answerable for a tort committed by a servant who, stepping aside from his duties, commits a malicious act for his personal resentment. In the concluding paragraph of the opinion it was said:

"We take the story as thus told to be true, for the purposes of the exception. Whether in fact the foreman struck plaintiff, and, if so, whether it was done in the discharge of the functions of his employment, or for some reason personal to himself, will, no doubt, be developed on the trial."

Counsel for defendant cite the following cases, in all except the last of which we find the rulings very pertinent to the case before us, viz.: Ware v. Barataria & Lafourche Canal Co., 15 La. 169, 35 Am. Dec. 189; Dyer v. Rieley, 28 La. Ann. 6; Williams v. Pullman Palace Car Co., 40 La. Ann. 87, 3 South. 631, 8 Am. St. Rep. 512; Candiff v. Louisville, N. O. & T. Railway Co., 42 La. Ann. 477, 7 South. 601; Lafitte v. N. O. City & Lake Railroad Co., 43 La. Ann. 34, 8 South. 701, 12 L. R. A. 337; McDermott v. American Brewing Co., 105 La. 124, 29 South. 498, 52 L. R. A. 684, 83 Am. St. Rep. 225; Queen v. Schwann, 119 La. 495, 44 South. 276.

In Ware v. Barataria Co. the ruling was that the defendant canal company was not answerable for an assault committed upon a boatman by the lockkeeper employed to collect tolls, although the quarrel that end-

ed in the assault arose from the boatman's failure to pay the toll.

In Dyer v. Rieley et al. the ruling was that the owners of a steamboat were not answerable in damages for the boat's mate's having thrown a pine knot at a deckhand and put his eye out, when the mate thought the deckhand was going to steal whisky stowed on the boat. The decision turned upon the court's finding that there was no proof that the mate had orders to guard the whisky, or was on duty as a watchman; hence no proof that the assault was a wrongful manner of performing a duty which, if it had been done properly, would have been within the scope of the mate's employment.

In Williams v. Pullman Palace Car Co. (and Louisville, N. O. & T. Ry. Co.) the ruling was that the Pullman Company was not answerable for an assault committed by a Pullman car porter upon a passenger, who asked permission of the porter to go into a Pullman car to wash his hands. The court found "that porters are mere menial servants, having no police authority whatever, and no connection with the enforcement of the rules of the service, except to report violations of them to the conductor, and that" the porter "had no authority to use violence towards any person for any purpose whatever. Hence," said the court, "this wanton assault was entirely foreign to the functions of his employment, and defendant [the Pullman Company] cannot be held responsible therefor." The doctrine announced in one of the headnotes to the decision is particularly pertinent to the facts of the case before us, viz.:

"The fact that the party injured was not a trespasser, but was lawfully on defendant's premises and was properly dealing with defendant's servant as a servant, does not suffice to fix defendant's liability, if the assault was wanton and entirely foreign to the functions committed to the servant; otherwise a banker, or a merchant, or a householder, would be liable for wanton assaults committed by their clerks or servants upon customers or visitors, which liability would clearly not exist unless the masters were guilty of fault in employing so dangerous a servant."

In a later decision in the same case (40 La. Ann. 417, 4 South. 85, 8 Am. St. Rep. 538), the railway company was held liable in damages for the assault, under the doctrine of responsibility of a carrier for the safety and security of a passenger for hire; the offending porter of the Pullman car in the railway company's train being considered as a servant of the railway company.

In Candiff v. Louisville, N. O. & T. Ry. Co. it was said that if the railroad conductor, on discovering that a car had been broken open, and believing that it had been done by a certain person, coolly walked up to such person as he was standing quietly at a station, saying and doing nothing, and shot him down without a word, such an act would be murder, entirely beyond the scope of any employment or function of the conductor, for which the company could not be held responsible.

The ruling in Lafitte v. N. O. City & Lake Railroad Company is directly in point. Plaintiff, a passenger on a street car, of which the driver in those days performed the duties of a conductor, was accused by the driver of giving him a counterfeit dollar, and was insulted and humiliated in presence of other passengers on the car. When the car reached its destination, and the plaintiff and the driver got off, the driver called a policeman and had plaintiff arrested. He sued the street railway company for damages for the false accusation and abuse on the part of the street car driver in presence of the passengers on the car, and also for the false arrest and imprisonment caused by the street car driver immediately after leaving the car. The street car company was held liable for the insult and abuse committed by the driver on the car, because of the contractual obligation of the

carrier for the safety and protection of a passenger for hire; but it was held that the act of the driver in having the passenger arrested when he stepped off of the car was not within the scope of the driver's employment, and that therefore the employer was not answerable for the unlawful arrest. The arrest was unlawful, because it turned out that the dollar given by the passenger to the driver was not counterfeit.

In McDermott v. American Brewing Co. the ruling was that the defendant employer was not answerable in damages for an assault committed upon plaintiff by a servant of the defendant, employed to deliver beer and collect the price, although the quarrel between defendant's employé and plaintiff arose from the latter's failure to pay for a keg of beer. The decision rested upon the finding that defendant's employé had delivered the beer without collecting for it, and that, in such case, the employé was, under the terms of his employment, responsible to the employer for the price of the beer, and that therefore, when the employé called upon plaintiff as the clerk of the customer, the next day, and demanded payment for the beer, he, defendant's employé, was acting for himself, and not within the scope of his employment.

The ruling in Queen v. Schwann has little or no application to the case before us, except that one of the reasons for rejecting the plaintiff's demand for damages for having been shot by a servant of the defendant was that the offending servant was not acting within the scope of his employment. In announcing the general doctrine, however, that the master is not answerable for a tort committed by his servant beyond the scope of the employment, the court referred with approval to nearly all of the decisions which we have reviewed in this opinion.

Our conclusion is that the offense committed by the servant of the defendants in this case was not within the scope of his employ-ment; that, when he stepped aside from the work he was employed to do and began abusing plaintiff, the servant was acting, not for either of his masters, but on his own responsibility; and that neither of the defendants, as employer of the offending agent, is answerable for the tort he committed.

The judgment is annulled, and plaintiff's demand is rejected, and his suit dismissed, at his cost.