**WILSON v. YAZOO & M. V. R. CO. et al.**

No. 5587.

Court of Appeal of Louisiana. Second Circuit.

April 29, 1938.

Clifford E. Hays and Floyd D. Culbertson, Jr., both of Minden, for appellant.

Thompson & Thompson, of Monroe, for appellees.

TALIAFERRO, Judge.

Plaintiff sues the defendant railroad company and its employees, J. M. Chandler, J. T. Stanford and F. A. Wright, to recover a large amount in damages sustained by him from an alleged unprovoked, malicious and unlawful assault upon and beating administered to him by said individuals in defendant's depot at Sibley, Louisiana, the afternoon of April 11, 1935. He additionally alleges that said assault and beating was the culmination of concerted action of and a conspiracy entered into by said Chandler, Stanford and Wright in the hope and for the ultimate purpose of securing his discharge from service by said railroad company, and to thereby deprive him of pension benefits which were about to accrue to him as a merited reward for his 45 years of service to said railway company and to other railway companies; that he was dismissed from defendant's employ on April 11, 1935, without being given a fair and impartial hearing as is provided for in "Schedule of Rules and Regulations and Rates of Pay for Telegraphers", by which said railroad company and petitioner were governed; that a direct effect of his said discharge was the deprivation to him of "pension benefits which would and were to have accrued to him under pension plans provided by the Y & M V Railway and by the United States of America", etc.; that on account of the loss of said pension benefits he has suffered additional damages in the sum of $9,000.00. He also alleges that Chandler, Stanford and Wright, at the time of said assault and battery, were in the employ of said railroad company, and were then and there acting in the course of their employment.

Chandler and Stanford are non-residents of Louisiana and were not served with process. They are not involved in the case as it now stands.

The railroad company and Wright denied each and every allegation of the petition, and, further answering, elaborately detailed the facts and circumstances of the two altercations in which plaintiff was involved as a party at the depot on April 11, 1935. The version of the altercations as alleged upon by defendants was, by the lower court, found to be true, under the testimony adduced on the trial, and plaintiff's demands were rejected. He has appealed.

We are favored by the trial judge with written reasons for the rejection of plaintiff's demands. His findings of fact so nearly tracts defendants' version of the facts which transpired immediately prior to, at time of and following the difficulties out of which grew this suit, we deem it unnecessary to a full exposition of the allegations of the answer to epitomize them here. We have diligently studied all the testimony in the case, and have given due weight and credit to all of it. We are in accord with the conclusions therein reached by the lower court, and adopt them as our own reasons for affirming its judgment, to-wit:

"On April 11, 1935 shortly after 5:00 o'clock p. m. conductor Wright's west bound freight train was at Sibley. Superintendent Stanford and trainmaster Chandler arrived at Sibley on a motor car. Train 202, a passenger train, was east bound and between Shreveport and Sibley. Trainmaster Chandler and Conductor Wright wanted this freight train to leave Sibley in time to meet train 202 at Doyline. They requested plaintiff to call the dispatcher for orders for the freight train. Superintendent Stanford (himself a telegraph operator) was in the back part of the station. Plaintiff apparently had trouble receiving the order, and when it was finally completed the freight train did not have time to reach Doyline to meet train 202, and Chandler charged plaintiff with delaying the freight train 30 minutes, which he denied, and called Stanford from the back of the station to ask him whether the charge was correct. Stanford said he thought Chandler was right and that plaintiff had delayed the train. Plaintiff said that whoever said he had delayed the train was a damned liar and the first difficulty took place, between Stanford and plaintiff. Chandler had already left the office. Wright shoved plaintiff over on the telegraph desk and plaintiff came up with a pistol which he pointed at Stanford's stomach and Wright ran out of the depot, but came back shortly. Stanford talked plain-

tiff into quieting down, and shortly after left Sibley. Chandler had also gone. Plaintiff worked the passenger train, 202. Wright says he helped him push the baggage truck down to the baggage car of the train, and just after train 202 left, and while Wright was waiting for his train to pull out, he and plaintiff had another fight out on the platform. Each of them says the other commenced the fight. In my opinion, it is immaterial, at least so far as the railroad is concerned. In this fight plaintiff was knocked down. After he got up he went back in the office and came out with a pistol, looking for Wright. Someone warned Wright to stay on the other side of the train, which he did, and plaintiff did not see him. Plaintiff sent a telegram to Wright at Bossier City that he would get him next day, but before Wright's train reached Bossier City he called the operator and told him to destroy the message, and it was not delivered to Wright.

"Plaintiff was called to Vicksburg for a hearing in the superintendent's office, and Mr. Stanford says he was asked if he wanted to have anyone represent him, and replied in the negative, and apparently offered no defense. Of course he was at a disadvantage in having the hearing before the man he was charged with assaulting. After the hearing and discharge he wrote Mr. Stanford and also Mr. Quigley, general superintendent of the railroad, imploring them to reinstate him in the service, and in some of the letters admitted he was more or less at fault, but excused himself on the ground that his health was not good, and he was worried about the condition of his wife's health. He says, too, that he had been told that the officials of the railroad were 'sitting on' him, meaning they were looking for an excuse to discharge him, and this may be so. If he thought they were looking for an excuse to discharge him, it seems that he used poor judgment in involving himself in an argument and fight with the very man who had authority to discharge him.

■ "I am of the opinion that his fear of being discharged at his advanced age, the consequent loss of what he thought his rights would be to a pension, and the condition of his and his wife's health had worried him till he was more or less irresponsible on the day of the difficulties. In spite of my sincere sympathy for plaintiff, and all others of his age and condition, I am compelled to decide that so far as the railroad is concerned he can recover nothing. There is not any evidence of any conspiracy to assault plaintiff or to cause his discharge from the railroad. If his version is correct, that Stanford struck him first, I think he provoked it by his belligerent attitude when charged with delaying the train. Chandler and Stanford had both left Sibley when the second fight occurred.

■ "All of the parties involved were at the time in the service of their common employer, the railroad, and in the course of their employment, but none of them were employed to fight or to provoke difficulties with other employees, and whatever was done in this regard was beyond and without the scope of their employment. See Godchaux v. Texas & P. Ry. Co., 144 La. 1041, 1044, 81 So. 706, and numerous other authorities.

■ "Counsel for plaintiff contend that the railroad by discharging plaintiff and retaining the other employees ratified the action of its employees and is therefore liable. If in this case the fight or attack on plaintiff had been made by any one of the employees because of what they termed his delay of the freight train, then, in my opinion, the railroad would be liable, but it is not shown that any attack was made in the nature of discipline. Chandler charged plaintiff with delaying the train. Plaintiff called Stanford to ask his opinion, and got an unsatisfactory one, Stanford agreeing with Chandler, who according to the weight of the evidence left the office, and it was after Chandler had left that plaintiff announced that anyone who said he had delayed the train was a damned liar; this statement of his provoked the difficulty, and I can see no way to stretch the facts to a case where the railroad is liable.

■ "This leaves only the question of whether the other defendant, Wright, should be held individually liable to plaintiff for his part in the affair. At the first encounter he was apparently acting as a peacemaker, which role he hastily abandoned when plaintiff secured the pistol. The second encounter, according to the weight of the evidence, was begun by plaintiff, and for that reason no recovery can be allowed."

Judgment is affirmed.