Statement of the Case.
MONROE, J.
Plaintiff, as widow and natural tutrix, sues for damages alleged to have been sustained by her and her minor children by reason of the suffering and death of James M. Gann, her husband and the father of the minors, and she prosecutes this appeal from a judgment maintaining an exception of no cause of action, filed on behalf of the Great Southern Lumber Company, one of the defendants. Confining our attention to so much of the petition as it is necessary to consider in determining the question thus presented, we find as follows:
It is alleged that the Great Southern Lumber Company (hereafter called the company) is a corporation, established under the laws of Pennsylvania and engaged in business in the parish of Washington, in this state; that it owns a large tract of timbered land in said parish, upon which it has erected a sawmill plant at a point called “town of Bogalusa”; that it is the sole owner of said town, which is laid off into squares, upon which are built dwellings, hotels, stores, and offices for the accommodation of the company’s employés and tenants, and which squares are separated by streets that are open to the use of the public; that the town has a population of several thousands of persons, but is not incorporated, and has no municipal government; that the company has erected therein a jail, or lock-up, and has — •
“employed several persons to discharge the functions of policemen and peace officers; that the said persons are selected and employed by said company, and receive payment for their services from said company, and are subject to, and act under the order of, said company; that in the months of February and March, 1910, the said company had in its employ, as such quasi policemen and peace officers, among others, one D. H. Hinson, alias Jake Hinson, and one Robert Oarson, alias Bob Carson; that both of said persons were not suitable persons for appointment as police officers, as was well known to the said company and its officers and agents; that on the 1st day of March, 1910, James M. Gann, the husband of plaintiff and father of her minor children, above named, was peaceably walking along the public streets of said town of Bogalusa, * * * on his way to the depot * * * to take a train for his home, accompanied by two friends and his eldest son, Claude Gann, when they were set upon by the said D. H. Hinson, * * * who, brandishing a pistol, attempted to arrest them, without warrant or authority of law; that, upon his failure to make his attempted illegal arrest, the said D. H. Hinson * * * retired, for a short time, and then returned with the said Bob Carson, and pursued her said husband and companions, overtaking them while they proceeded quietly on their way to the depot of said railroad; that, upon overtaking them, the said D. H. Hinson' * * * and Carson set upon them, and the said Carson immediately fired upon her said husband * * * with a pistol, severely and *403 fatally wounding him, and after said Gann was shot down and fatally wounded as aforesaid, and entirely helpless and prostrate upon the ground, but fully conscious, the said D. H. Hinson * * * and Carson did again assail him and kick him, * * * and strike and beat him in the face with a shotgun, and cursed and reviled him; that from the said wound her husband died, after several hours of physical pain and great bodily suffering and mental anguish and torture; * * * that all of the acts and doings of the said D. H. Hinson * * and the said Bob Carson were performed in their pretended character of peace officers and policemen, acting under the employment and orders of the said defendant the Great Southern Lumber Company, and its sole authority; that the said D. H. Hinson * * * and the said Robert Carson * * * did all the illegal, wanton, malicious, and unwarranted acts above set forth while pretending to act as policemen and peace officers, in the which capacity they were in the sole employment of the said defendant the Great Southern Lumber Company, receiving pay, wages, or salary from said defendant company only, and were governed solely by the instructions received from said company.”
There are further allegations to the effect that the defendant company ratified what was done by Hinson and Carson, by paying for the medical treatment and nursing required by them for wounds received in the affray, “thus wantonly, willfully, and maliciously provoked,” by retaining them in its employment and pay .whilst they were under treatment, by furnishing and paying counsel to defend Carson in a prosecution for the murder of said Gann, by assisting him in procuring bail, after a mistrial in the case, and in other ways.
And petitioner further alleges:
“That her said husband was a man engaged in mercantile and other business of a general character, which afforded to his family, his wife and minors above named, all the necessities and comforts of life, with means for the education of his children and for the accumulation of property for his later years; that as a result of his death your petitioner and her minor children have been deprived of husband and father, and of his care, protection, and support, and, all untrained, thrown upon the world to battle for themselves; that this deprivation and loss is the result of the unlawful, unwarranted, wanton, and malicious acts and conduct of said defendant company and said D. I-I. Hinson and Robert Carson * * * as hereinabove set forth; that, by reason of all the above, said defendants, the Great Southern Lumber Company and the said H. H. Hinson and said Robert Carson, * * * have become indebted unto your petitioner, individually and in her said representative capacity, in the sum of $155,000, jointly and in solido, as follows.”
And then follows a specification as to the damages and prayer for judgment.
Opinion.
“Though there is some conflict in the decisions as to the liability of a corporation for the torts of its officers and agents,” says a well-known writer, “the following propositions are supported by the weight of authority:
“(1) As a general rule, a corporation is liable, like a natural person, for the torts of its officers or agents within the scope, or apparent scope, of their authority.”
“(2) It is liable for a tort so committed, although it involves a specific intent or malice, for the intent or malice of its officers may be imputed to it.” Marshall on Corporations, p. 307 (p. 104).
In Williams v. Pullman Car Co., 40 La. Ann. 87, 3 South. 631, 8 Am. St. Rep. 512, it was said by this court:
“The earlier doctrine that, ‘in general, a master is liable for the fault or negligence of the servant, but not for his willful wrong or trespass’ has been greatly modified in modern jurisprudence, which places the test of the master’s liability, not on the motives of the servant, or the character of the wrong, but in the inquiry whether the act done was something his employment contemplated, and which, if properly and lawfully done, would have been within the scope of his functions.”
To about the same effect is the following expression by the Supreme Court of South Carolina, to wit:
“The old doctrine, that a corporation, having no mind, cannot be liable for acts of agents involving malice, has been completely exploded in modern jurisprudence. While a corporation is nonpersonal in its formal legal entity, it represents natural persons, and must, necessarily, perform its duties through natural persons as agents; hence must spring the correlative responsibility for the acts of the agents within the scope of their employment.” Hypes v. Southern R. Co., 82 S. C. 315, 64 S. E. 395, 21 L. R. A. (N. S.) 874, 17 Ann. Cas. 620.
In Barrett v. Minneapolis, etc., R. Co., 106 Minn. 51, 117 N. W. 1047, 18 L. R. A. (N. S.) *405 416, 130 Am. St. Rep. 585, being a case in which a trespasser on a freight train claimed damages for injuries sustained by reason of his being forced, by the wanton act and threat of a brakeman, to jump off while the train was in motion, it was said on behalf of the defense that there was a rule of the company prohibiting such action by its brakeman. The court, however, held that:
“A master is responsible for the torts of his servant, done in the course of his employment, with a view to the furtherance of his master’s business, and not for a purpose personal to himself, whether the same be done willfully, but within the scope of his agency, or in excess of his authority, or contrary to the express instructions of his master.”
And the doctrine thus stated is sustained by a note (citing a number of authorities) in which it is said:
“The doctrine of respondeat superior is not limited to the acts done with the express or implied authority of the master, but extends to the acts of the servant done in the discharge of the business intrusted to him, even though done in violation of instructions.”
Among the citations contained in the note we find the following:
“In Philadelphia, W. & B. R. Co. v. Brannen, 1 Sadler (Pa.) 369, 2 Atl. 429, where it appeared that the injury was occasioned by the negligent blowing of a locomotive whistle, contrary to the rules of the railroad company, the court said: ‘It is well-settled law that the master is liable for the act of his servant within the general scope of his employment, although the specific act be done at a time and in a manner contrary to the express order-of the master. Third persons can see and know the general scope of the employment in which the servant is engaged, but they have no means of knowing the secret orders given to him. They are, therefore, not affected by such orders.’
“In Philadelphia, etc., R. R. Co. v. Derby, 14 How. 468, 14 L. Ed. 502, it was held that the fact that a collision was caused by disobedience of orders by the locomotive engineer was no defense to an action for an injury in the collision by one who, though paying no fare, was lawfully on another locomotive by invitation of the president of the company. The court said: ‘The rule of respondeat superior, or that the master shall be civilly liable for the tortious acts of his servant, is one of universal application, whether the act be one of omission or commission, whether negligent, fraudulent, or deceitful. If it be done in the course of his employment, the master is liable; and it makes no difference that the master did not authorize, or even know of, the servant’s act or neglect, or even if he disapproved or forbade it, he is equally liable, if the act be done in the course of his servant’s employment.’ ”
[2] The language “in the course of his servant’s employment,” as thus used, is not to be taken as synonymous with “whilst the servant was employed by him,” but refers, as we understand it, to acts done by the servant, however ill judged, in connection with, or in furtherance of, the purposes of his employment.
Another case bearing upon the question here presented is that of Ploof v. Putman, 81 Vt. 471, 71 Atl. 188, 20 L. R. A. (N. S.) 152, 130 Am. St. Rep. 1072, 15 Ann. Cas. 1157, in which it was held:
“That the servant of the owner of a wharf was acting within the scope of his employment in. casting off a vessel moored there is sufficiently alleged in a declaration for damages for injuries thereby caused, by allegations that the wharf was in charge of the servant, and that defendant, by his servant, willfully and designedly, negligently, carelessly, and wrongfully unmoored the vessel.”
[1] Applying the principles thus stated, which are well sustained by authority, and, as we think, reason, to the question to be here decided, we are of opinion that the exception should have been overruled. The petition, which we have quoted, speaks for itself, and says that the acts complained of were willfully committed, without legal excuse, by persons employed by defendant, in the course of that employment, and that they resulted in the death, after great suffering, of plaintiff’s husband, the father of her children, upon whom she and they were dependent for support. The allegations thus referred to purport to state facts, not conclusions of law, and we know of nothing more that could be required to disclose a cause of action.
The judgment appealed from is therefore *407 set aside, the exception is overruled, and the case is remanded to the district court, to be there proceeded with according to law — the costs of the appeal to be paid by the defendant company.