For the reasons assigned, the judgment appealed from is affirmed.

---

(96 South. 529)

No. 24672.

## VICKNAIR v. DAILY STATES PUB. CO., Limited.

(April 30, 1923.)

*(Syllabus by Editorial Staff.)*

**1. Libel and slander ⚖➡80—Petition held not subject to exception for vagueness.**

Petition for libel alleging that newspaper article was false and malicious and caused plaintiff's minor daughter great mental anguish, sorrow, and mortification, etc., *held* not subject to exception of vagueness.

**2. Libel and slander ⚖➡80—Petition held to state cause of action.**

Petition in action for libel in publishing article stating that plaintiff's minor daughter was victim of criminal assault *held* to show that article was false and published with malice and to state cause of action.

**3. Libel and slander ⚖➡113—Compensatory damages recoverable whether there was actual malice or not.**

Plaintiff may recover compensatory damages for libel regardless of whether there was any actual malice or not.

**4. Libel and slander ⚖➡5—"Malice" imputed to defendant is legal malice implied from unlawful act.**

Malice imputed to publisher of libel is not personal ill will, but merely legal malice implied from willfully and wantonly doing an unlawful act which results in injury.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Malice.]

**5. Libel and slander ⚖➡69—Quasi offense actionable under statute.**

Libel is a quasi offense and actionable under Civil Code, art. 315, providing that every act causing damage to another obliges him by whose fault it happens to repair it.

**6. Libel and slander ⚖➡100(1)—Plaintiff only required to show fault resulting in damage and injury.**

Under Civ. Code, art. 2315, party suing for libel is only required to allege and prove condition of things showing fault on part of defendant, resulting in damages and injury to plaintiff therefrom.

**7. Libel and slander ⚖➡75—Suit maintainable in parish where libel published.**

District court of parish in which libel consisting of a newspaper article was published had jurisdiction of action for the libel.

**8. Libel and slander ⚖➡25—Not necessary that libel should be made known to public generally.**

In matters of libel, it is not necessary that defamation should be made known to the public generally or even to considerable number of persons, and communication to one person other than the one defamed is sufficient.

**9. Libel and slander ⊚═56(2)—Newspaper guilty of fault where its reporter acted on hearsay instead of examining complaint filed.**

Before publishing in a newspaper the report that a young girl had been criminally assaulted, it was duty of reporter, who knew complaint had been made, to examine the affidavit in person, and he was guilty of fault and negligence in relying on hearsay information from deputy sheriff as to name of person who had made the complaint and was victim of the assault.

**10. Libel and slander ⊚═121(1)—Damages in sum of $250 awarded for publication causing humiliation.**

Where newspaper article falsely stating that plaintiff's daughter was victim of criminal assault caused her much embarrassment and great humiliation by reason of inquiries about the affair, an award of $250 as damages *held* proper.

Appeal from Twenty-Eighth Judicial District Court, Parish of Jefferson; Prentice E. Edrington, Judge.

Action by Charles Vicknair against the Daily States Publishing Company, Limited. From a judgment for plaintiff for inadequate amount, he appeals. Affirmed.

Higgins, McGee & Dobbins, of New Orleans, and C. A. Buchler, of Gretna, for appellant.

Dart, Kernan & Dart, of New Orleans, for appellee.

LAND, J. On March 20, 1918, defendant company published in the Daily States, under the heading, "Dr. Louis J. Stumpf Accused by Girl. Former Gretna Alderman Said to have Attacked Patient in Dental Office," the following article:

"Dr. Louis J. Stumpf, prominent dentist and former alderman of the city of Gretna, is being sought by the Jefferson parish authorities under a warrant for a serious offense. An affidavit was preferred Wednesday before Justice George J. Trauth accusing Dr. Stumpf of attempted criminal assault."

"The alleged victim of Dr. Stumpf is the 15 year old daughter of Mr. and Mrs. Charles Vicknair, whose home is on the Vicknair dairy farm in the rear of Newton street, Gretna."

"It is said that Miss Vicknair went to Dr. Stumpf's office Wednesday morning for treatment, and, that after leaving the anteroom to go into the private office of the dentist, she was attacked. The girl attempted to scream and was prevented from doing so by Dr. Stumpf, who stuffed cotton into her mouth. She was bruised in the struggle."

"No one else was in the dentist's office at the time, and it is said there was no one who heard the girl's outcries. When she succeeded in getting out of the office, the girl went to her home and told her story to her parents, who then called on sheriff Marrero. Under the sheriff's advice, the charge was preferred."

On June 7, 1918, Charles Vicknair, on behalf of his minor daughter, Ura Cecelia Vicknair, aged 13, instituted the present suit for damages against defendant company, charging that the above article was "a gross, malicious, false, and vicious libel"; that neither at his office nor elsewhere was his daughter attacked by Dr. Louis J. Stumpf; that defendant company did, through its agents, circulate said libel in the parish of Jefferson, and through its publication caused his said daughter great mental anguish, sorrow, and mortification, and subjected her to notoriety and to the contempt, scorn, and ridicule of her friends and associates.

Averring the good reputation and behavior of his minor daughter, and the esteem and respect which she enjoys among her associates, plaintiff, on her behalf, claims damages against defendant company for the publication of said article in the sum of $15,000.

[1] The exception of vagueness filed by defendant company, is without merit, and was properly overruled by the trial judge.

[2] Nor do we find the exception of no cause of action well founded. The allegations contained in plaintiff's petition, if taken as true, show that said article was published with legal malice, and was wholly false, as far as plaintiff's daughter is concerned.

[3, 4] Plaintiff may recover compensatory damages, regardless of whether there was any actual malice or not. The malice im-

puted to a publisher of a libel is not personal ill will, but merely legal malice implied from willfully and wantonly doing an unlawful act which results in injury. Weil v. Israel, 42 La. Ann. 962, 8 South. 826; Covington v. Roberson, 111 La. 326, 35 South. 586; Hall v. Ewing, 140 La. 908, 74 South. 190; Flanagan v. Nicholson Pub. Co., 137 La. 588, 68 South. 964, L. R. A. 1917E, 510, Ann. Cas. 1917B, 402.

[5, 6] Under the laws of Louisiana, libel is a quasi offense, actionable under the broad provisions of article 2315 of the Civil Code:

"Every act whatever of man that causes damage to another, obliges him by whose fault it happens to repair it."

All that is necessary in this state for a party demanding damages from another for a libel is to allege a condition of things such as would show "a fault" on the part of the defendant, resulting in damages and injury to himself therefrom, and on the trial of the case to establish the truth of the allegations. Covington v. Roberson, 111 La. 326, 35 South. 586; Hall v. Ewing, 140 La. 908, 74 South. 190; Spotorno v. Fourichon, 40 La. Ann. 424, 4 South. 71; Warner v. Clark, 45 La. Ann. 863, 13 South. 203, 21 L. R. A. 502.

[7, 8] The exception to the jurisdiction of the Twenty-Eighth judicial district court for the parish of Jefferson, was disposed of by proof of publication of said libel in the parish of Jefferson on the trial of the case. It is not necessary in matters of libel that the defamation should be made known to the public generally, or even to a considerable number of persons. It is sufficient that it be communicated to only one person other than the person defamed. Jozsa v. Moroney, 125 La. 813, 51 South. 908, 27 L. R. A. (N. S.) 1041, 19 Ann. Cas. 1193.

Defendant company admits in its answer the publication of the article in question, denies that it had any malice or ill feeling to the plaintiff, or that it was actuated by any improper motive, and alleges that said publication was made in good faith and upon information communicated to it by a deputy sheriff of Jefferson parish.

Defendant company further admits that, having discovered, after the publication of said article, that Mrs. Amelia Vicknair had caused the filing of the charge against Dr. Stumpf, it published the new version of said affair in the Daily States the next day after the first publication appeared.

The testimony on the trial of this case shows that plaintiff and his daughter stand well in the community in which they live, and enjoy the esteem and respect of their neighbors.

Instead of being in the office of Dr. Stumpf and the victim of a criminal assault, on March 20, 1918, as published, the young daughter of plaintiff was at home attending the McDonogh Jefferson High School.

[9] A criminal assault is an attack upon the chastity of a female, and, even when not consummated, is a most delicate subject to be discussed in the public press, although the identity of the intended victim is fully established. It was well known to defendant company's reporter that a complaint had been made before a justice of the peace of Jefferson parish, whose office was just across the hall from the sheriff's office in the courthouse of said parish. Instead of seeking information from a deputy sheriff in this matter, over a telephone, it was the duty of the reporter of the Daily States to have visited the office of the justice of the peace and to have examined the affidavit in person in order to avoid the possibility of a mistake in preparing a news item in a matter so serious.

The testimony in the case shows that newspaper reporters come each morning to this office and make an examination in their search for the news in criminal matters. It is further shown that all of the information given over the telephone by the deputy sher-

iff to the reporter of the Daily States was entirely hearsay on the part of that officer. That such information was utterly false and without the slightest foundation, as far as the daughter of plaintiff is concerned, is not even. denied in this case. The publication of such information, therefore, cannot be justified on the ground of good faith in accepting it as true. Mrs. Vicknair, who signed the affidavit against Dr. Stumpf, is not even related to plaintiff's daughter, but is a member of another family. There was fault and negligence on the part of the reporter of the Daily States in not making diligent inquiry from the proper officer as to the true facts of the case before publishing his story.

In the case of Upton v. Times-Democrat Publishing Co., 104 La. 144, 28 South. 971, this court said:

"For injury resulting from oversight or negligence, even when there is no malice or evil intent, may give rise to liability in damages. A newspaper would yet be liable if an injurious untruth should find its way into its columns, though the merest accident. The law seeks to protect the innocent who has been injured by libelous reports. 'The fact that a management may be all that can be expected to guard against unfortunate accidents is not in itself a protection from damages and a sufficient defense."

[10] The daughter of plaintiff testified to her humiliation occasioned by the inquiries of her schoolmates about this unfortunate affair. Her brother also testified to frequent embarrassments to which he was subjected by questions about what happened to his sister.

The article in question is not merely a report as to a court proceeding, but it purports to detail minutely the facts in the commission of the alleged criminal assault. It describes the outcry of plaintiff's daughter, the forcible gagging to stifle her screams for help, and declares that "she was bruised in the struggle." It even pursues her to her home, after the alleged assault, and pictures her as telling her story to her parents, who are represented as calling upon the sheriff and preferring the charge under his advice.

In the case of Delambre v. Kyes, 136 La. 687, 67 South. 552, we said:

"Plaintiff may have failed, in the sense of the common-law rule, to show any special damage growing from the slanderous charges of defendant; yet, as we say in Miller v. Holstein, 16 La. 389, she has shown that she enjoys a good character in the community in which she lives, and it is difficult to come to the conclusion that there was no damage shown. "'If there be any intellectual enjoyment higher than that of possessing a good name, or gratification greater than the respect of our neighbors, they must be looked for in matters out of the reach of the libeler. Such a charge as is stated * * * is in itself presumption of damage. In this view, the law has left the damages to the jury, subject to the revision of this court.'"

See, also, Fatjo v. Seidel, 109 La. 699, 33 South. 737; Simpson v. Robinson, 104 La. 180, 28 South. 908.

This case was tried by the lower court without a jury. The trial judge evidently found, as we find, that the publication of · this article, while made in good faith, and without malicious motive, occasioned much embarrassment to the daughter of plaintiff and subjected her to a humiliating notoriety, if not to actual damage to her good name. His award of $250 damages meets with our approval, under all of the circumstances of the case.

The judgment appealed from is therefore affirmed; appellant to pay the costs of appeal; defendant company to pay costs of lower court.

ROGERS, J., concurs in decree.