CNIELL, C. J.
 

 This is a possessory action, with a demand for damages for trespass, and an- injunction to prevent further trespassing. The deifendants are Michael H. Cooper, residing and domiciled in the parish of Tangipahoa, and the Lake Cypress Lumber Company, domiciled in the parish of St. Tammany. The land that the plaintiff claims to possess, as owner, and on which the defendant, Lake Cypress Lumber Company, was deadening, felling and removing: the cypress timber when stopped by the injunction, is partly in the parish of Tangipahoa and partly in the Parish of St. Tammany. It is designated on the government surveys as the Richard Smith headright,
 
 *505
 
 composed of the irregular section 37 in township 8 south, range 9 east, and the irregular section 43 in township 8 south, range 10 east, the two sections together having an area of 640.12 acres, extending. approximately three miles along the northwest shore of Lake Pontchartrain and having a comparatively small depth. The dividing line between the parish of Tangipahoa and the parish of St. Tammany is the dividing line between ranges 9 and 10 east of the meridian, the consequence being that section 37 is in Tangipahoa and section 43 is in St. Tammany parish. The plaintiff bought the land from Ernest Lee Jahncke, Walter F. Jahncke and Paul P. Jahncke, together with a larger and adjacent area of land extending southwestward from section 37, nearly two miles further along the lake shore, and described as the south % of section 14, lot 4 of section 22, lots 1 and 2 of section 23, and ?.11 of the irregular sections 38, 39 and 40, in township 8 south, range 9 east, and therefore in the parish of Tangipahoa. The Jahnekes had bought the whole tract from a corporation styled Jahncke Realty Company, but theretofore the chain of title for the south % of section 14, lot 4 of section 22, lots 1 and 2 of section 23, and the irregular sections 38, 39 and 40, was not the same as for sections 37 and 43, composing the Richard Smith headright. The deadening and felling of the timber, by the Lake Cypress Lumber Company, which brought forth this suit, was done on the northeast end of section 43, being the northeast end of the whole tract, and therefore in the parish of St. Tammany. The suit was filed in the parish of Tangipahoa, which is in the Twenty-First judicial district, whereas St. Tammany parish is in the Twenty-Second judicial district.
 

 The defendants took exception to the jurisdiction of the court, ratione persons et ratione materia. The exception filed by Cooper was promptly overruled because of his domicile being in the parish in which the suit was brought. The exception filed by the Lake Cypress Lumber Company was referred to the merits, because it required the taking of testimony to determine whether the court had jurisdiction by reason of the place where-the trespass was committed, and, if not, whether the court had jurisdiction because of a joint or solidary liability on the part of the two defendants, one of whom resided within the jurisdiction of the court.
 

 The defendants also excepted to the allegations of the petition as being vague and indefinite, in that it was alleged merely that a trespass was committed on the Richard Smith headright, and was not alleged that the trespass was committed on any particular part of the headright, or whether it was committed on section 37 or on section 43. And, in that connection, the defendants moved to strike out of the petition the allegation of possession of that part of the land not included in the Richard Smith head-right, because it was not alleged that any act of trespass was committed on the land not included in the headright. The exception of vagueness was overruled, and the motion to strike out was referred to the merits, on the theory, very likely, that proof of possession of any part of the whole tract might become a factor in determining whether the plaintiff had that character of possession necessary to sustain the possessory action for a trespass alleged to have been committed on another part of the tract.
 

 The defendants, reserving their exceptions to the court’s rulings on their previous pleas, filed separate but similar answers. They denied that the plaintiff or the plaintiff’s authors in title had been in possession of the Richard Smith headright, and averred that one Susie Smith Munsch was placed in possession on the 19th of April, 1924, by a judgment of the district court for Tangipahoa parish, rendered and recorded that day, in
 
 *507
 
 the succession of Richard Smith, and recognizing her claim to be the daughter and only surviving heir of the deceased, Richard Smith. They averred that Susie Smith Munsch sold the land to Cooper on the 10th of April, 1924, by a deed duly recorded in both parishes, and that Cooper sold the timber on the land to the Lake Cypress Lumber Company on the 29th of April, 1924, by a deed duly recorded in both parishes, and that the company immediately took possession of the property and exercised acts of ownership, to the knowledge of the plaintiff. The defendants averred that their only purpose in setting forth their chain of title was to show their right of possession, or the nature and character of their possession of the property.
 

 ' The ease was tried on the issues so stated and resulted in a judgment for the plaintiff, perpetuating the injunction, quieting the plaintiff in its possession of the property, and condemning the Lake Cypress Lumber Company to pay the plaintiff $1,362.40 for the value of the timber which the Lake Cypress Company had taken from the land. The defendants have appealed from the decision.
 

 There was no merit in Cooper’s exception to the jurisdiction of the district court. His domicile was in the parish of Tangipahoa and therefore within the territorial jurisdiction of the court.
 

 The plea that the petition was vague and indefinite was not well founded, because the date, or about the date, on which, it was alleged, the defendant went upon the land and deadened and felled and began removing the timber, was stated in the petition, and the defendants knew where their operations were going on.
 

 The motion to strike out of the petition the allegations of possession of the land not included in the Richard Smith headright should have- been overruled also, because the plaintiff claimed possession of the whole tract of- land under one deed, and had the right to allege and prove such manifestations of possession of any part of the tract as might show an intention of possessing the whole or any part of it.
 

 The most serious question was whether the trial court had jurisdiction of the suit against the Lake Cypress Lumber Company, whose domicile was not in the parish where the suit was brought, but in the adjoining parish, where, also, the trespass was committed. As a general rule, an action for damages for trespass must be brought either in the parish where the defendant has his domicile or in the parish in which the trespass was committed. Code of Practice, art. 165, subd. 8. A suit against a corporation for damages ex delicto, for any cause, must be brought either ip the parish where the corporation has its domicile or in the parish where the damage was done or the cause of action arose. Act 108 of 1908, p. 165, amending article 165, subd. 9, Code of Practice; Act 179 of 1918, § 1, subsec. (5), (d), p. 336. We doubt, therefore, that the jurisdiction of the trial court in this case could have been sustained on suqh a doctrine as that a possessory action, or suit for damages for trespass, on a tract of land located in two parishes, but trespassed upon only in one parish, in which, also, the defendant has his domicile, may be brought in either of the two parishes in which the land is situated. There is another rule, however, by which the trial court had jurisdiction in this case; that is, that where two or more defendants residing in different parishes are answerable jointly or in solido to the plaintiff, he may sue them in a court having jurisdiction over either or any one of them. The defendants in this case were parties to a joint adventure, so to speak, to take the timber off of this land without first invoking the aid of the court, on a claim of ownership too far-fetched to inspire them with good faith, but having
 
 *509
 
 the hope that the plaintiff here could not prove that character of possession which would be necessary to maintain a possessory action. The so-called sale of the timber by Cooper to the Lake Cypress Lumber Company was only a contract on the part of the lumber company to fell and remove the timber and pay Cooper certain stipulated prices per thousand feet for whatever quantity of timber might be so removed, and as removed. There was no cash or other consideration paid or given. It was a joint adventure, in which the parties were to share the proceeds of an act of trespass. They undertook jointly to commit a trespass, for which they would be liable in solido for whatever damages the trespass might cause to the owner of the property to be trespassed upon. The plaintiff therefore had the right to sue both of them at the domicile of either of them.
 

 The facts shown on the trial of the case have left no doubt that the defendants were joint trespassers. The deadening and felling of the timber by the Lake Cypress Lumber Company was commenced within a few days after the Rathborne Lumber Company placed on record its deed from the Jahnckes. During the two years preceding the sale by the Jahnckes to the Rathborne Lumber Company, the Lake Cypress Lumber Company was negotiating with the Jahnckes to buy the timber from them, and was recognizing and acknowledging in writing that the Jahnckes owned and were in possession of the land. The Lake Cypress Lumber Company was then carrying on pull boat operations, on a large scale, on a tract of land called the Fredericks tract, adjacent to section 43 on its north and east side; and, at the company’s request, a survey of the north and east boundary line of section 43 was made by the parish surveyor of Tangipahoa parish, in order, as the Lake Cypress Company suggested, that the company should avoid encroaching upon the Jahnckes’ land; and, when the survey was completed, the Lake Cypress Lumber Company’s officers and the Jahnckes signed and approved it; and thereafter the Lake Cypress Lumber Company respected the lines so established by the surveyor, and cleared the Fredericks tract of its timber completely, up to but not beyond the boundary lines of section 43. The act of sale by the Jahnckes to the Rathborne Lumber Company was made on the 15th of April and recorded in St. Tammany parish on the 25th and in Tangipahoa parish on the 26th of April. On the 21st day of that month, Mrs. Susie Smith Munsch, wife of William Munsch, residing in Tangipahoa parish, filed a petition in the district court of that parish, alleging that she was the daughter and only heir of Richard Smith; that Richard Smith was married only once, and then to Rosalie Mitchel, in the year 1865, and that she, Susie Smith Munsch, was the only child born of that marriage. She averred that Richard Smith died in Tangipahoa parish in 1870, intestate, and owning the headright described as section 37, township 8 south, range 9 east, and section 43, township 8 south, range 10 east, containing 640.12 acres. Wherefore she prayed to be recognized as the only heir of the deceased Richard Smith and, as such, to be sent into possession of the headright so described. The petition was signed by her and by her attorney, who represented also Michael H. Cooper in his dealings with the Lake Cypress Lumber Company, and is representing both of them in the defense of this suit. There was no impropriety in the attorney’s representing, in turn, all three parties to the transactions, because there was no conflict of interest, between or among them. We mention the matter merely as evidence that Cooper and the Lake Cypress Lumber Company were working together, for their mutual advantage, and with common knowledge of the origin and apparent weakness of the claim which they were ac
 
 *511
 
 quiring from Mrs. Munsch. The allegations of her petition were sworn to by her and were supported also by the affidavits of two other Coopers, made on the 12th of April, before Mrs. Munseh’s attorney in his capacity of notary public. On that evidence alone, the judge rendered an ex parte order or judgment, on the 19th of April, recognizing Mrs. Munsch to be the daughter and only surviving heir of Richard Smith, born of the marriage contracted with Rosalie Mitchel in the year 1865, and sending Mrs. Munsch into possession as owner of the Richard Smith head-right, as described above. We have referred to the apparent weakness of Mrs. Munsch’s claim, not with the idea of passing judgment on the conflict of titles between the plaintiff and the defendants in this suit — for this is only a possessory action — but for the purpose of determining whether the defendants were in good faith in their joint undertaking to take the timber off of the Richard Smith headright without first contesting in court the Jahnckes’ right of possession as owners of the land. The apparent weakness of the claim of Mrs. Munsch was in the fact that the patent which issued in favor of Richard Smith and his heirs and assigns and legal representatives, although not issued until the 4th of February, 1857, was issued in confirmation and as evidence of his head-right as an actual settler on the land in 1809, as shown on a government “List of Actual Settlers in 1813,” and as confirmed by an act of Congress in 1819. Richard Smith must have arrived at the age of majority before he became an actual settler on the headright, in 1809, as shown by the record thereof in the office of the commissioner of the Greenburg district of Louisiana; and so, Richard Smith was not less than 77 years of age on his wedding day, if he married Rosalie Mitchel in 1865. ' Mrs. Munsch did not appear as a witness in the case; neither did Michael H. Cooper. The deed from her to him was dated the 10th of April, nine days before she was recognized as Smith’s heir by the ex parte order of the court, and two days before she made oath to the allegations of her petition to be declared the heir. The price stated in the sale was $18,000, of which $2,000 was said to be paid in cash, and the balance was said to be payable in annual installments of $2,000 each, covering a period of eight years. The deed was not filed for record until the 25th of April. The timber contract between Cooper .and the Lake Cypress Lumber Company was signed on the 29th of April; and, on that day, the eight promissory notes which Cooper had given to Mrs. Munsch, for $2,000 each, were placed in escrow, in a bank, to protect the Lake Cypress Lumber Company against the mortgage securing the payment of the notes, and to secure to Mrs. Munsch the payment of the notes out of the share of the proceeds coming to Cooper from the timber operations of the Lake Cypress Lumber Company. It was during that same month that the Lake Cypress Lumber Company’s crew went upon the land and commenced deadening and felling the timber.
 

 The facts which we have related dispose of the possessory action on its merits. Aside from the fact that the Lake Cypress Lumber Company, before entering into the contract with Cooper, recognized and expressly acknowledged that the Jahnckes were in possession of the land, the latter had actual possession in the only way that such property could be actually possessed. When they bought the land it was considered valuable mainly if not only because of á large deposit of shells on the lake shore. They were engaged in the business of dredging and selling such material. The property had been utilized in that way by one of their authors in title, Francisco' Marquez, who held title under mesne conveyances, emanating from Richard Smith, from 1853. The heirs of Marquez sold the headright to F. L. Leumont in
 
 *513
 
 1809. He sold to the Jahncke Navigation Company in January, 1910, and the latter sold to the Jahncke Realty Company in August, 1915. Marquez had an agent in charge of the property, attending to th,e shipment of shells and accounting to Marquez regularly for the proceeds of the sales. The agent had a pier and wharf built at the lake shore, on the headright, where schooners landed regularly and took on their cargo of shells. The wharf was destroyed by storms, but the wreck is there yet. When the Jahnckes bought the land they placed a keeper in charge, who lived in a camp on the west bank of the Tangipahoa river, not on the Richard Smith headright but on another part of the tract which we have described; the occupancy of which part, by the caretaker looking after the whole tract, was, in our judgment, a sufficient manifestation of possession of the whole tract.
 

 The amount of the judgment for damages is supported by the testimony of an expert timber estimator, who measured the tops and stumps, and the distance from the tops to the stumps, of the trees which the Lake Cypress Lumber Company took off of the land. The valuation which he put upon the timber was, approximately, the price stipulated in the sale by the Jahnckes to the plaintiff. The figures seem high, nearly $13.70 per M feet, but there is no other evidence on the subject in the record; besides which, it appears that the judge made no allowance for the damage which was likely to result from the girdling and deadening of 620 cypress trees which the defendant lumber company had not yet felled.when the operations were stopped by the injunction. The amount allowed by the judgment does not seem excessive.
 

 The judgment appealed from is affirmed.
 

 ST.. PAUL, J., concurs in the decree.