183 So. 247

**WISEMORE v. FIRST NAT. LIFE INS. CO., Inc.**

No. 34567.

June 27, 1938.

Rehearing Denied Aug. 5, 1938.

derous remarks directed to plaintiff by defendant's agent.

Defendant company tendered an exception to the jurisdiction ratione personae of the Fourth Judicial District Court, in which the suit was brought, and also exceptions of misjoinder of parties defendant, of misjoinder of causes of action, and of no right or cause of action. In maintaining the exception of no right or cause of action, judgment was rendered in favor of defendant company rejecting plaintiff's demands and dismissing plaintiff's suit at his cost.

The minutes of the court, of date April 28, 1937, contain the following notation:

"26,540—Wilmer Wisemore v. First National Life Ins. Co. *All exceptions* sustained as to the First National Life Ins. Co." T. p. 4.

The exception of misjoinder of parties defendant; the exception of misjoinder of causes of action; and the exception of no right or cause of action, tendered by defendant company, are numbered 1, 2, and 3, and are included in the same pleading. T. p. 24.

J. Norman Coon, of Monroe, for appellant.

Normann & Bethea and Harold M. Rouchell, all of New Orleans, for appellee.

LAND, Justice.

The plaintiff, Wilmer Wisemore, Agent of the Federal Health and Accident Company, seeks in this suit to recover damages in the sum of $8,000 against defendants, First National Life Insurance Co., Inc., and J. L. Hill, its agent, in solido, because of certain alleged false, unfounded and slan-

It is therefore clear that the trial judge maintained all of these exceptions, and, in so doing, overruled, in effect, the exception to the jurisdiction ratione personae of the trial court, filed herein by defendant company.

An appeal, devolutive and suspensive, was granted to plaintiff,

Defendant company has answered the appeal, and prays that the judgment appealed from be so amended as to maintain,

in addition to defendant Company's exception of no right or cause of action, its exceptions of misjoinder of parties defendant, and of misjoinder of causes of action, and that, as amended, the judgment be affirmed.

(1) Petitioner alleges that he was in Alvin Dudley's place of business in the City of Monroe, La., on Thursday morning, January 7th, 1937, and was in the act of writing Alvin Dudley's application for a sick and accident insurance policy with petitioner's company, Federal Health and Accident Company. Petition Par. 5.

That J. L. Hill, Agent for Defendant Company, First National Life Insurance Co., Inc., came into the place, and interrupted the conversation between petitioner and Alvin Dudley, and then and there directed to Alvin Dudley the following remarks:

" 'Do you know that that man (referring to petitioner) is a thief and stole money from the First National Life Insurance Company and from the policy holders of First National Life Insurance Company; and that that was why said First National Life Insurance Company discharged the said Wisemore from its employment as a sales agent and collector?' That the said Dudley replied to J. L. Hill that he, the said Dudley, did not care to pay any more premiums on his insurance contract then in force with First National Life Insurance Company and that he, the said Dudley was going to let said contract lapse, because he, the said Dudley could get a better contract with Federal Health and Accident Company through petitioner as sales agent, which would pay the said Dudley more

weekly disability income benefits and would provide for a greater death benefit." Petition Par. VIII.

Petitioner then asked the said Hill:

" 'Who told you that I stole money from the Company?' the said Hill replied that the manager of his company told him and further added that petitioner was forced to leave said company because of his shortage in his accounting of money collected for the First National Life Insurance Company during the preceding year at a time when your petitioner was then working for said company; and the said Hill further added that your petitioner did not have enough money to pay his shortage with said company, and that that was the reason petitioner was fired by the First National Life Insurance Company." Petition Par. IX.

Petitioner alleges that he did not provoke any of the remarks from Hill, but, on the other hand, acted calmly and tried to reason with Hill on the matter of the charges made against him. Petition Par. X.

That the slanderous remarks were made by Hill in the presence and hearing of Alvin Dudley, Lucille Dudley and several other persons.

That petitioner was in Alvin Dudley's place of business, at the time, also "for the purpose of soliciting Lucille Dudley with the intention of getting her application for insurance with your petitioner's then Company, Federal Health and Accident Company, but that he was prevented from securing the insurance business of the said Lucille Dudley, because of the said Hill's

defamatory remarks, all of which were untrue and unfounded." Petition Par. XI.

"That the said J. L. Hill, at said time also threatened to fight and beat your petitioner up, if he, the said Hill, ever thereafter caught your petitioner at any of the homes or places of business where any of the regular customers lived or stayed, that is the policy holders of the First National Life Insurance Company on the route, which was being covered, solicited, inspected and collected by the said Hill for the Defendant Company, and that the said Hill used other defamatory language and demonstrated actions for the purpose of intimidating your petitioner from writing any insurance business or collecting premiums from any persons in competition with the said Hill and his said company, one of the defendants herein." Petition Par. XII.

"Your petitioner now shows that at the time and place the said J. L. Hill made all of said defamatory remarks and threatening demonstrations, that he, the said Hill, was in the employ and working for the First National Life Insurance Company within the course of his employment and within the scope thereof, in connection with the soliciting of insurance business, collecting premiums from the policy holders, getting said policy holders to retain their insurance and to generally advertise and promote the interest of said defendant company and to increase its volume of business, and particularly to carry on said dealings with the Dudleys, and that all of the said actions and defamatory remarks of the said Hill were authorized by, consented to and ratified by the said defendant insurance company,

which acts inured to the benefit of said company and which acts were done in the furtherance of the financial interests of said company, and all of which acts were done for the designed intent and have resulted in the profit of said defendant insurance company by its eliminating certain competition in its said field of business and by having damaged, injured and irreparably harmed the good reputation, which your petitioner enjoyed prior to said time, and especially as to his integrity, honesty and fair dealings, with policy holders and everyone, and that by reason thereof, the First National Life Insurance Company is legally responsible and liable in solido with its said Agent for the payment of the damages suffered by your petitioner." Petition Par. XV.

Petitioner specifically denies that he ever embezzled any of defendant company's money, or that he unjustly retained the same. He alleges that about the first week in December, 1936, he left the employ of defendant company, and, at that time, he did not owe that company anything, nor does he owe that company anything now.

Petitioner specifically denies that he has ever cheated or defrauded, or wrongfully obtained or retained any money from any of the policy holders of defendant insurance company. Petition Par. XIV.

Petitioner alleges that at the time the defamatory remarks were made, the defendants well knew that they were untrue, and that a false accusation was being made against petitioner. Petition Par. XVI.

That, prior to the date, and up to the time that his character was attacked, he enjoyed

a good reputation for honesty and fair dealings with policy holders and insurance companies and with everyone, but, due to spreading of the remarks made by Hill in the City of Monroe, in which both were then working, and to places far beyond, petitioner, since that date, has suffered considerable financial loss of profits from the reduction in writing of insurance policies and also from the reduction in the collection of insurance premiums, because a considerable portion of the public now believes that he is a thief and cannot be trusted. Petition Par. XVIII.

That the defamatory remarks made by Hill have caused petitioner great mental anguish, embarrassment and humiliation, and have resulted in social ostracism. Petition Par. XIX.

(2) The present suit for damages for slander is brought under the following Articles of the Revised Civil Code of the State: Articles 2315, 2317 and 2320.

■ Article 2315 declares that "Every act whatever of man that causes damage to another, obliges him by whose fault it happened to repair it."

This Court has repeatedly held that slander is a quasi offense and is actionable under this article.

Article 2317 of the Revised Civil Code declares that: "We are responsible, not only for the damage caused by our own act, but for that which is caused by the acts of persons for whom we are answerable."

Article 2320 of the Revised Civil Code declares that: "Masters and employers are answerable for the damages occasioned by their servants and overseers, in the exercise of the functions in which they are employed."

In Gann v. Great Southern Lumber Co., 131 La. 400, 59 So. 830, this Court said:

" 'Though there is some conflict in the decisions as to the liability of a corporation for the torts of its officers and agents', says a well-known writer, 'the following propositions are supported by the weight of authority:

" '(1) As a general rule, a corporation is liable, like a natural person, for the torts of its officers or agents within the scope, or apparent scope, of their authority.' " Page 404, 59 So. page 831.

" '(2) It is liable for a tort so committed, although it involves a specific intent or malice, for the intent or malice of its officers may be imputed to it.' Marshall on Corporations, p. 307 (p. 104.) " Page 404, 59 So. page 831.

In the Gann Case, the following statement by the Supreme Court of South Carolina is quoted with approval: .

"The old doctrine, that a corporation, having no mind, cannot be liable for the acts of agents involving malice, has been completely exploded in modern jurisprudence. While a corporation is nonpersonal in its formal legal entity, it represents natural persons, and must, necessarily, perform its duties through natural persons as agents; hence must spring the correlative responsibility for the acts of the agents within the scope of their employment." Hypes v. Southern R. Co., 82 S.C. 315, 64

S.E. 395, 21 L.R.A.,N.S., 873, 874, 17 Ann. Cas. 620."

In Pattison v. Gulf Bag Co. et al., 116 La. 963, 41 So. 224, 114 Am.St.Rep. 570, it was held that a corporation is responsible in damages for a libel. See, also, Vinas v. Merchants' Mutual Insurance Company, 27 La.Ann. 367; and Vicknair v. Daily States Pub. Co., 153 La. 677, 96 So. 529. In R.C.L. Permanent · Supplement on Libel and Slander, Section 135, page 4270, it is said:

"While a few courts and text writers have announced the doctrine that a corporation is never liable for slanderous words uttered by its agent, the overwhelming weight of authority is to the contrary. The majority rule seems to be that if *the agent acting within the scope of his employment and on the actual performance of his duties utters a slander, a* corporation is liable although *it has no knowledge of the slander and does not approve it.* Vowles v. Yakish, 191 Iowa 368, 179 N.W. 117, 13 A.L.R. 1132." (Italics ours).

In Corpus Juris, Vol. 14a, page 779, Section 2855, the law on the subject is stated as follows:

"It is well established that a corporation may be liable for a slander uttered by its agent, and according to the weight of authority *it is liable where the slander by its agent is within the scope and in the performance of his duties in the course of transacting the business of the corporation.* The rule governing liability in cases of libel and slander being regarded as the same, it is not essential to the liability of a corporation *that the slanderous words were spoken with its knowledge and approval, or that it ratified the act of its agent or servant.* According to another view, however, a corporation is not liable for slander except where it has expressly authorized or subsequently ratified it, or where it constitutes a breach of duty toward plaintiff arising out of contract." The majority rule as to the liability of a corporation in cases of slander prevails in this State.

In Williams v. Pullman Car Co., 40 La. Ann. 87, 3 So. 631, 8 Am.St.Rep. 512, it is said by this Court (page 632):

"The earlier doctrine that, 'in general, a master is liable for the fault or negligence of the servant, but not for his willful wrong or trespass,' has been greatly modified in modern jurisprudence, which places the test of the master's liability, not in the motives of the servant, or in the character of the wrong, but in the inquiry whether the act done was something which his employment contemplated, and which, if properly and lawfully done, would have been within the scope of his functions."

In Gann v. Great Southern Lumber Co., 131 La. 400, 59 So. 830, this Court cited the following case at page 405, 59 So. at page 832:

"In Philadelphia, etc., R. R. Co. v. Derby, 14 How. 468, 14 L.Ed. 502, it was held that the fact that a collision was caused by disobedience of orders by the locomotive engineer was no defense to an action for an injury in the collision by one who, though paying no fare, was lawfully on an-

other locomotive by invitation of the president of the company.

"The court said: 'The rule of respondeat superior, or that the master shall be civilly liable for the tortious acts of his servant, is one of universal application, whether the act be one of omission or commission, whether negligent, fraudulent, or deceitful. If it be done in the course of his employment, the master is liable; *and it makes no difference that the master did not authorize, or even know of, the servant's act or neglect, or even if he disapproved or forbade it, he is equally liable, if the act be done in the course of his servant's employment.*'" (Italics ours).

In commenting upon this case, this Court said, in the Gann Case:

"The language 'in the course of his servant's employment,' as thus used, is not to be taken as synonymous with 'whilst the servant was employed by him,' but refers, as we understand it, to acts done by the servant, *however ill judged, in connection with, or in furtherance of, the purposes of his employment.*" Pages 405, 406, 59 So. page 832.

(3) In the case at bar, the slander against plaintiff by J. L. Hill, sales agent and collector of defendant insurance company, was committed "in connection with and in furtherance of the purposes of his employment", and while acting within the scope of his employment. The Dudleys lived on Hill's route, which was regularly visited and inspected by him for the company. It was his regular duty, and he was, as the time, on a mission and errand for the company for the purpose of collecting insurance premiums from the Dudleys in connection with their policies with the company. He was also calling on the Dudleys for the purpose of obtaining their application for additional insurance for the defendant company, *and of getting them to keep in force their insurance contracts which they already had with defendant company.*

But when Alvin Dudley told Hill that he did not care to pay any more premiums on his insurance contract then in force with defendant company, but was going to let the contract lapse, because he could get a better contract with Federal Health and Accident Company, through plaintiff, as sales agent, instead of trying to meet the competition in a lawful way by making a better offer, or by attempting to satisfy Alvin Dudley with his contract with defendant company, Hill tortiously denounced plaintiff 'as a thief", and threatened to beat him, if he ever thereafter caught plaintiff at any of the homes or places of business where any of the regular customers of defendant company lived.

Such conduct on the part of Hill, while acting within the scope of his authority and in the performance of his duties as agent of defendant company, clearly constituted a tortious act upon his part, which renders defendant company and Hill, its agent, liable in solido for damages for the slanderous charges made against plaintiff.

The petition therefore discloses a cause and right of action for damages against both defendants.

(4) The defendant company is liable for damages for the slander uttered

against plaintiff by its agent, under the rule of respondeat superior, or that the master shall be civilly liable for the tortious acts of his servant, when committed while acting within the scope of his authority. Rev. Civ.Code, Art. 2320.

J. L. Hill, agent of defendant company, is liable in damges for the slander against plaintiff, under Article 2315 of the Revised Civil Code, which declares that "Every act whatever of man that causes damages to another, obliges him by whose fault it happened to repair it."

(5) As already pointed out in this opinion, defendant company is a tort-feasor under Article 2320, and its agent is a tort-feasor under Article 2315 of the Revised Civil Code.

The liability alleged by plaintiff against the two defendants grows out of one, and the same act of slander, uttered by the agent of defendant company, whose liability as master results directly from the tort of its servant, committed within the scope of his authority in connection with the business of that company. Hence, defendants, joint tort-feasors, are liable in solido and may be sued jointly.

In Jones v. Maestri, 170 La. 290, 127 So. 631, it is said by this Court at page 293, 127 So. at page 632, of the opinion:

"Joint tort-feasors are solidarily liable *and may be sued jointly* either in the parish where the tort was committed *or at the domicile of any one of the joint tort-feasors.* Civ.Code art. 2324; Code of Practice, art. 165, §§ 6, 8 and 9, as amended by Act 130 of 1926; Rathborne Lumber Co. v. Cooper, 164 La. 502, 114 So. 112."

The sixth paragraph of Article 165 of the Code of Practice declares that "When the defendants are joint or solidary obligors, they may be cited at the domicile of any one of them."

In King v. Wm. J. Burns International tective Agency, 151 La. 211, 91 So. 681, it was held that the sixth paragraph of this article *was applicable only to suits on conventional obligations and not to suits against joint tort-feasors for damages arising ex delicto.* However, that decision was overruled in Joseph Rathborne Lumber Co. v. Cooper et al., 164 La. 502, 114 So. 112, in which it was held that the sixth paragraph of Article 165 of the Code of Practice *was applicable to an action for damages against joint tort-feasors as well as to a suit on a contractual obligation;* and in Gardiner v. Erskine, 170 La. 212, 127 So. 604, the Rathborne Lumber Co. Case is affirmed, and is re-affirmed in Jones v. Maestri, 170 La. 290, 127 So. 631, cited supra in this opinion.

The settled jurisprudence of the State is therefore as stated in Jones v. Maestri, supra:

"Joint tort-feasors are solidarily liable *and may be sued jointly* either in the parish where the tort was committed *or at the domicile of any one of the joint tort-feasors.*"

(6) Defendant company, First National Life Insurance Co., Inc., one of the joint tort-feasors, is a Louisiana corpora-

tion, domiciled in the City of New Orleans, Parish of Orleans.

J. L. Hill, agent of defendant company, and the other joint tort-feasor, has his domicile in the City of Monroe, Parish of Ouachita, the parish in which the slander or tort was also committed by Hill, agent.

Under this state of facts and under the authorities above cited, the present suit was brought, properly and jointly, by plaintiff, against defendant company and its agent, Hill, joint tort-feasors liable in solido, in the Fourth Judicial District Court for the Parish of Ouachita.

It is therefore clear that the District Court of that parish has jurisdiction, and that the exception to its jurisdiction ratione personae, tendered by defendant company, was properly overruled.

It is also clear that the exceptions of misjoinder of parties defendant, and of misjoinder of causes of action, tendered by defendant company, are without merit, and should have been overruled.

For the reasons already stated in this opinion, the exception of no right or cause of action, tendered by defendant company, is not well founded, and should have been overruled also.

For the reasons assigned, it is ordered that the judgment appealed from, maintaining the exception of no right or cause of action tendered by the defendant, First National Life Insurance Co., Inc., and rejecting the demands of plaintiff, Wilmer Wisemore, and dismissing plaintiff's suit at his costs, be and is hereby annulled and reversed.

It is further ordered that the exception of no right or cause of action, and the exceptions of misjoinder of defendants, and of misjoinder of causes of action, tendered by defendant company be and they are hereby overruled.

It is now ordered that the case be remanded and reinstated on the docket of the Fourth Judicial District Court for the Parish of Ouachita, to be proceeded with according to law and the views herein expressed. Costs of this appeal are to be paid by defendant company, appellee, and all other costs to await the final disposition of the case.

O'NIELL, C. J., dissents on the authority of Godchaux v. Texas & Pacific R. Co., 144 La. 1041, 81 So. 706.

ODOM, J., dissents and hands down reasons.

ODOM, Justice (dissenting).

In my opinion, plaintiff's petition does not disclose a cause of action against the defendant insurance company. Corporations are, under some circumstances, liable in damages for libels published and slanderous words spoken by their agents and employees. But this, in my opinion, is not a case where the corporation is liable.

The reason is that the petition, read as a whole and with all its parts construed together, does not show that Hill's alleged slanderous remarks about the plaintiff were uttered in connection with any duty con-

templated by his employment or in connection with any business he was employed to transact for his principal. He was employed by the insurance company to write insurance and to collect premiums. He met plaintiff at Dudley's place and there said, in the presence of Dudley and others, that plaintiff was a thief and had been discharged by the defendant insurance company on account of defalcations.

In the leading case of Williams v. Pullman Palace Car Co., 40 La.Ann. 87, 3 So. 631, 634, 8 Am.St.Rep. 512, this court quoted with approval the following from Cooley on Torts, page 536:

"The test of the master's responsibility * * * is not the motive of the servant, *but whether that which he did was something which his employment contemplated, and something which, if he should do it lawfully, he might do in the employer's name.*" (Italics are mine.)

That is the true test of responsibility in all cases of this kind, and all the courts and text writers have recognized and applied it. Applying that test, the court in the Williams Case held that the car company was not liable in damages to the plaintiff, who was assaulted by one of its porters. The porter was defendant's employee, and his acts were "unlawful and tortious". But it was held that there was no liability because the unlawful and tortious acts of the porter were not committed in the exercise of the functions of his employment, or, as the court pointed out, plaintiff's case did not meet the test of Article 2320 of the Revised Civil Code, which says that masters and employers are answerable for the damages occasioned by their servants and overseers "in the exercise of the functions in which they are employed".

The porter in that case was a menial servant, employed to clean up the car, to keep it in order, to wait on passengers, and had no connection with the enforcement of the rules of service. The court said that the assault committed by him on the plaintiff was as completely outside "the functions in which he was employed" as could be imagined.

The same is true, I think, in the case at bar. Hill was an employee of the defendant. But his slander of plaintiff was outside "the functions in which he was employed". It was not "something which his employment contemplated" or something which, if he should have done it lawfully, he might have done in his employer's name.

The majority opinion in this case goes far beyond the ruling in any of the cases cited in support of it, or in any of the cases I have been able to find after considerable research. The ruling, in my opinion, is calculated, if followed as a precedent, to work very great hardship in many cases on employers. As Judge Cooley in his work on torts says:

"It will readily occur to every mind that the master cannot, in reason, be held responsible generally for whatever wrongful conduct a servant may be guilty of. A liability so extensive would make him guarantor of the servant's good conduct, and would put him under a responsibility which prudent men would hesitate to assume."

Time does not permit a review of the cases. But the following statement by this court in Valley v. Clay, 151 La. 710, 92 So. 308, clearly sums up the ruling of this court on the question of the liability of masters for the torts of their servants. After citing numerous cases, this court said (page 309).

"The rule, as laid down in all these cases, is that, for the master to be liable, the injury must have been caused by some act expressly or by reasonable implication within the scope of the agent's employment."

In the case of Godchaux v. Texas & P. R. Co., 144 La. 1041, 81 So. 706, the leading cases on the subject were reviewed, and this court said (page 707):

"It is not enough, however, to support the doctrine of respondeat superior, that the quarrel that resulted in the tort committed by the servant arose from and out of the business which he had authority to transact, and that he was acting within the scope of his employment at the moment when he stepped aside from the business of his master to commit the wrongful act on his own behalf and without regard for the business of the master. The responsibility of the master for a tort committed by his servant does not depend upon whether the tort was committed in the *course* of the employment; the test is whether the tort was committed within the *scope* of the employment. The doctrine of the common law is the same as the rule expressed in the Civil Code, viz.: Masters are answerable for the damages occasioned by the fault of their servants, 'in the exercise of the functions in which they are employed.' R.C.C. arts. 2315, 2317, 2320."

Plaintiff alleges in his petition that Hill, the agent of the defendant insurance company, slandered him while in the course and scope of his employment. But the facts alleged elsewhere in the petition clearly show, in my opinion, that that is not true. The bare allegation that an agent's acts are done in the scope of his employment is only a conclusion of the pleader. Hale v. Gilliland Oil Co., 151 La. 500, 91 So. 853.

In the early case of Henry Etting v. Commercial Bank of New Orleans, 7 Rob. 459, 464, this court said:

"The true rule seems to be, that when the agent acting in the capacity bestowed upon him by the corporation, and in discharge of some duty or employment directed by the employer or incidental to his situation, does an act that causes damage to an individual, the body corporate is responsible; but where the agent does any act of his own free will, without reference to his functions as a corporate agent, then the corporation is not responsible. For example, if a person should go into a banking house or an insurance office, and there get into a difficulty, or dispute in relation to business of the corporation, with an agent or officer, and an assault and battery should ensue, we suppose it would not be seriously contended that the bank or office was answerable in damages, unless there was some express recognition of the act. Articles 430, 431, 433, 434, of the Code, prove this position to be correct. We suppose a bank could not maintain an action

for damages against an individual, if he were to say that it was insolvent, or had issued more notes than it was authorized by its charter. If this be so, it would be unjust to make it responsible for an unauthorized accusation made by one of its officers against another person."

In an earlier case, Ware v. Barataria and La Fourche Canal Co., 15 La. 169, 35 Am.Dec. 189, the court said:

"When an agent, losing sight of the object for which he is employed, commits wrongs and thereby causes damage, the principal is no more answerable for them than any stranger; as to such wrongs, the agent must be considered as acting of his own will and not in the course of his employment, or under any implied authority of his principal."

It is true, as pointed out in the majority opinion, that the earlier doctrine that as a rule corporations are not liable for the wilful wrongs or trespasses of its agents has been greatly modified. But the rule laid down in Article 2320 of the Code, that masters and employers are answerable for the damage occasioned by their servants "in the exercise of the functions in which they are employed", has never been modified. That is still the law.

In the case of Joseph Vowles v. M. F. Yakish et al., decided by the Supreme Court of Iowa and reported in 191 Iowa 368, 179 N.W. 117, 13 A.L.R. 1132, it was held that:

"The mere fact that an insurance adjuster, while attempting to adjust a loss, charges an insured with burning his own prop-

erty, does not render the insurance company liable if the subject-matter in controversy was not the origin of the fire, but the value of the stock."

This is a most illuminating opinion, citing many authorities touching the question as to what are considered acts within the scope of an agent's authority. Following this case as reported in A.L.R. is a most interesting note under the heading "Liability of insurance company for libel or slander by its agents or employees".

I dissent.