No. 883

First Circuit

DAVIS ET AL. v. LINDSAY FURNITURE CO. ET AL.

(December 8, 1931. Opinion and Decree.)
(February 8, 1932. Rehearing Refused.)
(March 30, 1932. Writs of Certiorari and Review Refused by Supreme Court.)

Benton & Benton, of Baton Rouge, attorneys for plaintiffs, appellants.

Breazeale & Sachse, of Baton Rouge, attorneys for defendants, appellees.

ELLIOTT, J.   This case was before this court previous to the present time on an exception of no cause of action and the facts fully stated in ruling on the exception.  126 So. 572.  A rehearing was granted, and in acting on the rehearing the facts were restated.   See 14 La. App. 215, 129 So. 447.

The exception of no cause of action was overruled, and the case was then tried on the merits.  From a judgment in favor of the defendants, on the merits, rejecting plaintiff's demand, John F. Davis appealed.

Maedell Davis, wife of John F. Davis, who claims in the suit on account of personal injuries received in a difficulty with M. B. Lindsay, defendant's agent, not having appealed, the damages claimed by her cannot be considered in view of the provisions of the Civil Code, art. 2402 (amended by Act No. 68 of 1902) restricting recovery to the injured wife.   We therefore leave the evidence on that subject out of view. Our opinion and decree on the present appeal is to have no bearing nor effect on the rights of Maedell Davis, but the damage to the property, as well as the damage sustained on account of the invasion of his house and humiliation and mental suffering caused by the alleged act of defendant's agent, is claimable by John F. Davis.

The defendants contend that the principal or master is responsible for the malicious criminal acts of its agents or servants, only when he has authorized or ratified such acts.

Defendants admit in their answer:

"That their agent, M. B. Lindsay, went to the house of the petitioners on the day mentioned, for the purpose of collecting the balance due defendants on a bill for some shades purchased by plaintiffs."

In a further averment they say:

"Further answering defendants show that their agent went to the house of petitioners on the 11th of June 1929 in accordance with a previous understanding had with petitioners to-wit—."

The averment continuing says that their agent, M. B. Lindsay, went to plaintiffs' house at the appointed time, pursuant to their agreement with John F. Davis, and not being paid, commenced to carry out the other part of the agreement, that is, to take possession of the shades, upon which he was assaulted by Maedell Davis and did nothing more than defend himself from her assault.

In their last averment it is again said:

"That all he did, was necessary in defense of himself from the assault of Mae-

dell Davis. That he was there by appointment previously made and was carrying out that appointment as previously entered into."

It is plain from defendants' answer that M. B. Lindsay was their agent, sent to plaintiffs' house by them, pursuant to an alleged agreement entered into between them and John F. Davis; that not having been paid the balance due on the window shades he proceeded to take the shades down by force; and that he was justified in doing so. Justification of their agent's acts in the matter of taking the shades and approval of his course is the gravamen of the defense.

The right to remove the shades by force and whether the damage done to the property in the house as alleged in the petition was the act of defendants' agent and the result of his fault, done in the exercise of the functions in which he was employed, are the questions which require consideration in the case.

About half of the purchase price of the shades had been paid, leaving a balance of about $17, which it seems had been due about eight months; but the amount of collecting which the evidence indicates was done in connection with defendants' business indicates that sales were made on terms of credit.

Mr. Genre, in the employ of defendant, states in his testimony that he had a conversation with John F. Davis, shortly before the time in question, in which the plaintiff told him that he would be at the store not later than Monday to make a payment, and, if not, then there would be some one at his house on Tuesday evening who would either pay the account or else release the shades.

J. K. Lindsay, one of the defendants, testifies that he heard the conversation between Mr. Genre and John F. Davis. Mr. Lindsay remembered the conversation a little differently. He says that plaintiff John F. Davis told Mr. Genre that he would try to make a payment Monday and, if he did not, he would rather we would take the shades up, because he was having trouble of some kind and was short of money and for us to send out there Tuesday, and, in the event he did not have the money, that somebody would be there to release the shades.

M. B. Lindsay, defendants' collector, went to the place pursuant to the arrangement. An old woman, Mary Gordon, grandmother of Maedell Davis, was present, and he requested her to give him the shades. She refused to do so, requesting him to wait until Maedell came. He proceeded to take down the shades without waiting and without her consent, and had rolled up one of the shades for the purpose of taking it down when Maedell came in. Mary Gordon, describing the way he acted, says that he came into the house and said to her: "I want those curtains and things." She says that she replied: "Well you can't get them now; wait until Maedell and John come. It is only 4 o'clock and they always come at 4 o'clock." But he said, "No I'm going to get them right now," and went to taking them down. By that time Maedell came in, and he said to her "I am getting the things," and Maedell said to him, "Please don't take them now." That he hit Maedell with a stick and a fight followed, the details as to which it is not necessary to take into account in acting on the appeal of John F. Davis.

Maedell says as she came into the house she heard her grandmother saying: "Mister, don't take those shades down, wait un-

til John comes." That she put her packages down and said to him: "Wait until my husband comes; he will be here in a little while." To which Mr. Lindsay said: " 'I have orders to come out here and get the goods or the money,' and he picked up a broom and hit me," etc.

M. B. Lindsay, testifying on the subject, says that he had no authority from Lindsay Furniture Company to take the shades by force. He states in his testimony:

"Q. Did Mr. Genre tell you to take these shades by force, if they were not given to you voluntarily?
"A. No sir.
"Q. When you did that, you were acting on your own authority?
"A. Yes."

In another place he testifies:

"Q. Mr. Genre had told you, that you were to receive the money or the shades on that afternoon?
"A. Mr. Genre told me that, yes, that I was to receive the money or the shades."

John F. Davis, testifying in the case, denies that he ever had any discussion with Mr. Genre about the shades in which he agreed if he did not pay the balance due that Lindsay Furniture Company could have the shades, etc. Mr. J. K. Lindsay supports Mr. Genre in the matter, so we take it that he did; but we have it from M. B. Lindsay himself that he had no authority from Lindsay Furniture Company to take the shades down by force. Therefore when Mary Gordon and Maedell, wife of John F. Davis, refused to give him the shades, requested him not to take them down, and resisted the taking amicably, he should have desisted until the matter could be taken up with John F. Davis and determined in the way provided for by law.

The evidence shows that the struggle with Maedell Davis was brought on by his fault and course of conduct. In his effort to take the shades by force he was acting in the exercise of the functions in which he was employed within the sense and meaning of the law. Civ. Code, art. 2320. But his doing so was unjustifiable and unlawful. In the struggle with Maedell the property in the house was damaged as alleged in the petition. During the fight defendant's agent in some way got outside the door, upon which Maedell slammed the door, shutting him outside. He thereupon kicked in the door and threw a brickbat inside the house. Defendants are responsible for the conduct of their agent and for the damages resulting from his act and fault in the matter of the present complaint. The rule stated in Ware v. Barataria & Lafourche Canal Co., 15 La. 169, 35 Am. Dec. 189, cited by defendants, has been modified. Gann v. Great Southern Lumber Co., 131 La. 400, 59 So. 830, announces what we believe to be the correct rule on the subject of responsibility. We copy from the syllabus as follows:

"Within the rule that the master is liable for the torts of his servant, committed in the course of his servant's employment, the language 'in the course of his servant's employment' is not synonymous with 'whilst the servant was employed by him,' but refers to any act of the servant, however ill judged, done in connection with, or in furtherance of, the purposes of his employment."

In Matthews v. Otis Mfg. Co., 142 La. 88, 76 So. 249, 250, the court approvingly quoted as follows:

"But the tendency of later jurisprudence is to discard this distinction and to recognize the liability of the master, not only for the negligence of his servants, but also for their torts when done within the scope of their employment, or, in the language of the Code, 'in the exercise of the functions in which they are employed.' It matters not that the acts were willful and tortious, nor that they have been com-

mitted in disobedience of express orders of the master; if they have been done in the exercise of the functions of their employment, the master is liable." Citing, etc., Nash v. Longville Lumber Co., 146 La. 475, 83 So. 771, and others are to the same effect.

The responsibility of the defendants to John F. Davis on account of his humiliation, and mental suffering, due to the conduct of their agent, bringing on a fight and creating a disturbance with plaintiff's wife, for which defendants' agent was at fault, throwing a brickbat in the house and alarming his neighbors, is in our opinion established, and the courts should take proper cognizance of such wrongs. We have fixed on the sum of $100 as the amount of damages which the defendants should pay John F. Davis on said account.

In addition to the sum stated, the property of John F. Davis in the house was damaged to the extent of $54.25 as alleged in plaintiff's petition. An item of $3 claimed on account of doctor's bill paid for wife is not supported by testimony, and is therefore not allowed. The total sum due John F. Davis is fixed at $154.25 and is to draw legal interest from judicial demand.

The judgment appealed from herein rejecting the demand of John F. Davis is erroneous and contrary to the law and the evidence, and the said judgment is now, to the extent above mentioned, annulled, avoided, and set aside, and it is now ordered, adjudged, and decreed that there be judgment in favor of John F. Davis and against the defendants Lindsay Furniture Company and M. B. Lindsay and J. K. Lindsay in solido for $154.25, with 5 per cent per annum interest thereon from June 21, 1929, until paid.

Defendants and appellees to pay the cost in both courts.