96 So.2d 14

The CITY OF NEW ORLEANS

v.

UNITED CAB OWNERS, Inc., et al.

No. 43435.

May 6, 1957.

Rehearing Denied June 10, 1957.

Morey L. Sear, Henry B. Curtis and Ellis, Lancaster, Daly & King, for relator.

Joseph V. Di Rosa, Leo R. Wertheimer, New Orleans, for defendants, respondents.

HAMLIN, Justice ad hoc.

Remedial writs, accompanied by a stay order, were granted in this case (Article VII, Sec. 10, Louisiana Constitution of 1921–LSA) to review a judgment of the trial court reading as follows:

"This matter having been submitted to the Court on exceptions to its jurisdiction, ratione personae and materiae, and the Court considering the exceptions are well founded:

"It is ordered, adjudged and decreed that plaintiff's suit be dismissed, without prejudice, at plaintiff's cost; the temporary restraining order is dissolved, ab initio, and all pending contempt proceedings are dismissed."

The City of New Orleans, a municipal corporation, brought injunction proceedings

against United Cab Owners, Inc., Cooperative Cab Company, Inc., all officers, directors, agents, employees, and representatives of both companies, certain named individuals, and all persons, firms, associations and corporations acting in concert with them, or under or subject to their control, persuasion or influence, in which it prayed for a temporary restraining order and a preliminary injunction enjoining the defendants from—

1. Trespassing on plaintiff's property at the Moisant International Airport;

2. Entering, and driving taxicabs, upon the Airport for any purpose other than to discharge passengers being transported by them to the Airport, or to come to the Airport to pick up Airport patrons when specifically requested to do so by said patrons;

3. Remaining on, and refusing to leave, the Airport after discharging passengers transported by them to the Airport;

4. Soliciting passengers at the Airport;

5. Laying hands on the baggage of Airport patrons unless first engaged by them;

6. Lingering or loitering on the Airport;

7. Obstructing parking areas, loading zones and roadways thereon;

8. Creating any disturbance in the parking areas, loading zones and roadways;

9. Committing any act or engaging in any activity, the purpose or effect of which is to interfere with or prevent plaintiff's orderly and efficient operation, maintenance, administration and/or policing of the Airport, or plaintiff's performance of any of its obligations.

The Moisant International Airport is located in Jefferson Parish, which adjoins the Parish of Orleans where the City of New Orleans is situated.

The record discloses that the City of New Orleans owns, operates, maintains, administers, and polices the Airport, through the New Orleans Aviation Board. It was constructed with public funds under the authority of LSA–R.S. 2:131 [1]–2:141, formerly Act 222 of 1936, designated as the "Uniform Airports Law", Ordinances 15,839 CCS and 16,605 CCS, and 680 MCS, of the City of New Orleans, and Article V, Chapter 7, of the Home Rule Charter for the City of New Orleans, adopted pursuant to

---

1. "Cities, towns, parishes, and other political subdivisions of this state may separately or jointly, acquire, establish, construct, expand, own, lease, control, equip, improve, maintain, operate, regulate, and police, airports and landing fields for the use of aircraft, either within or without the geographical limits of such municipalities, parishes, and other political subdivisions, and may use for such purposes any available property that is owned or controlled by such political subdivisions; but no parish shall exercise the authority hereby conferred outside of its geographical limits except in an adjoining parish and this only jointly with the adjoining parish."

Article XIV, Section 22 of the 1921 Constitution of Louisiana.

The petition alleges that in December, 1956, the New Orleans Aviation Board determined that the requirements of public convenience and necessity demanded safer and more efficient and responsible transportation of passengers and their hand baggage from the Airport, and increased protection to passengers and the general public against risks resulting from the ownership, operation, maintenance and use of taxicabs, airport limousines and airport buses effecting transportation. Bids were advertised for the furnishing of such services, and the only bid submitted was that of Toye Brothers Yellow Cab Company of New Orleans. On February 8, 1957, the Board entered into a written contract with Toye Brothers for the furnishing of taxicab, airport limousine and airport bus service for transportation of passengers and their hand baggage from the Airport. There was a publication in the official journal of the City of New Orleans, to the effect that the contract would become effective on February 25, 1957; that, thereafter, only Toye Brothers would be permitted to provide taxicab and limousine ground transportation services from the Airport; but, that independent taxicab operators would be permitted to transport passengers to the Airport, and from the Airport when specifically requested to do so by Airport patrons.

The City of New Orleans alleges that the defendants, acting individually and in concert with each other and others, repeatedly trespassed upon plaintiff's property for purposes other than to discharge passengers transported to the Airport or to pick up passengers. Besides trespassing, plaintiff alleges that defendants—

1. Solicited passengers;

2. Laid hands on baggage of airport patrons without being engaged by them;

3. Lingered and loitered at the airport;

4. Obstructed parking areas;

5. Created disturbance;

6. Refused to comply with rules, regulations and orders of the Board; all in deliberate disregard of the rights of plaintiff, as owner and operator of the Airport.

The City of New Orleans also avers that, while it is unable to make an accurate estimate of the monetary amounts of the injury, loss and damages that may be sustained by it as a result of the defendants' aforesaid acts and activities, they may aggregate as much as $241,500, which is the minimum amount of money that it expects to receive from Toye Brothers during the term of the contract.

The defendants filed exceptions to the jurisdiction ratione personae and materiae of the Civil District Court for the Parish of Orleans. They contend that the alleged trespass occurred in the Parish of Jefferson,

and that only a district court for that parish would have jurisdiction under Article 165, Sec. 8, of the Louisiana Code of Practice, which recites:

> "Trespass on Real Estate. In actions of trespass on real estate, and in all matters relating to real servitudes, be they natural or conventional, the judge of the place where the property is situated shall have cognizance of the cases."

In sustaining the exceptions, the trial judge reasoned that Articles 162,[2] 165(8), and 165(9),[3] of the Louisiana Code of Practice, should be read together. The only conclusion he could draw was that in a suit such as the present matter, the action should be brought at the situs of the Airport. He further reasoned that Article 165 (9) of the Louisiana Code of Practice should be interpreted as giving the defendant a right to be sued at his domicile when

2. "It is a general rule in civil matters that one must be sued before his own judge, that is to say, before the judge having jurisdiction over the place where he has his domicil or residence, and shall not be permitted to elect any other domicil or residence for the purpose of being sued, but this rule is subject to those exceptions expressly provided for by law."

3. "In all cases where any person, firm or domestic or foreign corporation shall commit trespass, or do anything for which an action for damage lies or where any domestic or foreign corporation shall fail to do anything for which an action for damage lies, such person, firm or corporation may be sued in the parish where such damage is done or trespass com-

there was an action for damages as a result of a trespass.

The instant matter presents the situation of a municipality attempting to prevent any interference with the operation of a contract executed under its police powers,[4] such interference occurring at the situs of property owned by the municipality in an adjoining parish but committed by persons the majority of whom are residents of and domiciled in the municipality.

We agree with the trial judge that all of the pertinent articles of the Louisiana Code of Practice—162, 165(8), and 165 (9)—should be read and considered together. What is clear in one might be called in to explain what is doubtful in another.[5] Article 165 contains the following exceptions to the general rule set forth in Article 162 that a defendant must be sued at his domicile:

mitted or at the domicil of such person, firm or corporation."

4. "Cities, towns, parishes or other political subdivisions of this state acquiring, establishing, developing, operating, maintaining, or controlling airports or landing fields, without the geographical limits of such subdivisions, under the provisions of this Part, may promulgate, amend, and enforce police regulations for such airports or landing fields." LSA–R.S. 2:138.

5. "Laws in pari materia, or upon the same subject matter, must be construed with a reference to each other; what is clear in one statute may be called in aid to explain what is doubtful in another." LSA–C.C. Art. 17.

Section 1 refers to partition of real property. The suit *must* be brought before the court of the place where the property is situated. This is mandatory.

Section 2 refers to partnership. The parties *must* be cited where the partnership is established; or if there are several establishments, before that of the place where the obligation was entered into. Here again the word "must" is used.

Section 3 refers to matters relative to failure. All suits already commenced, or which may be subsequently instituted against the debtor, *must* be carried before the court in which the failure has been declared.

Section 4 refers to matters relative to warranty. They *must* be carried on before the court having cognizance of the principal action in which demands in warranty arise.

Section 5 refers to foreigners and those having no known place of residence. Here we first encounter the word "may". It is provided that they may be cited wherever they are found.

Section 6 refers to joint or solidary obligors. Here again the word "may" is encountered. They may be cited at the domicile of any one of them.

Section 7 refers to official bonds. In suits to enforce the collection of bonds of state and parish officers, the courts of the parishes in which the officers exercise the duties of their offices *shall* have jurisdiction over the sureties, it matters not in what parishes they reside. Here again we encounter a mandatory provision.

Section 8, supra. This section uses the words "shall have cognizance". It does not provide, as does Section 4, supra, that the action "*must* be carried before the court having cognizance".

Section 9, supra. Here again we encounter the word "may".

Section 10, relative to suits on policies of insurance. Here again the word "may" is encountered.

We have carefully considered the authorities relied upon by the parties to this proceeding, and we find that the nearest to being applicable to the instant matter is the case of Joseph Rathborne Lumber Company v. Cooper, 164 La. 502, 114 So. 112, 114. This was a possessory action with a demand for damages for trespass and an injunction to prevent further trespass. The property involved was located partly in the Parish of Tangipahoa and partly in the Parish of St. Tammany, and the suit was brought in the Parish of Tangipahoa. The defendants were domiciled in the Parish of Tangipahoa and in the Parish of St. Tammany. In the instant case, some of

the defendants are domiciled in the Parish of Jefferson and some in the Parish of Orleans.

There is no demand for damages in the case before us, but the following reservation is contained in Article 30 of plaintiff's petition:

"By reason of the foregoing facts and circumstances, defendants are liable in solido to plaintiff for the injury, loss and damages which have been, and may in the future be, sustained by it as a result of the aforesaid acts and activities of defendants, and plaintiff expressly reserves all of its rights to assert its claims against and recover from each and all of said defendants all amounts for which they or any of them may be liable."

In the Rathborne case, supra, this Court held:

"* * * As a general rule, an action for damages for trespass must be brought either in the parish where the defendant has his domicile or in the parish in which the trespass was committed. Code of Practice, art. 165, subd. 8. A suit against a corporation for damages ex delicto, for any cause, must be brought either in the parish where the corporation has its domicile or in the parish where the damage was done or the cause of action arose. * * *"

Had plaintiff coupled its prayer for an injunction with a demand for damages, there would have been no controversy as to the jurisdiction of the Civil District Court for the Parish of Orleans. Article 165(9) of the Louisiana Code of Practice specifically states:

"* * * where any person, firm or domestic * * * corporation shall commit trespass, or do anything for which an action for damage lies * * such person, firm or corporation may be sued in the parish where such damage is done or trespass committed or at the domicil of such person, firm or corporation."

Giving the present case a reasonable consideration, it is certainly a matter in which damages could have been demanded. Article 165(9) does not state that damages *must* be demanded.

We think that the present controversy, because of the existing conditions, is one falling under section 8 and section 9 of Article 165 of the Code of Practice, which must be read and considered together. Had the action been brought in Jefferson Parish, the judge of that parish could not have refused to take cognizance of the matter.

In the case of Fourth Jefferson Drainage District v. City of New Orleans, 203 La. 670, 14 So.2d 482, 485, this Court affirmed the judgment of the district court overruling the exceptions filed by the City

of New Orleans to the jurisdiction of the Twenty-Fourth Judicial District Court in and for the Parish of Jefferson. We held that since the trespass to the property occurred in Jefferson Parish, said court had jurisdiction of the matter under Article 165, sec. 8, of the Louisiana Code of Practice. In that case, we said:

"The basis of the plaintiff's cause of action is the alleged trespass by the defendant upon its real estate and its real survitudes through the alleged ultra vires and unlawful acts of the defendant in forcefully seizing and divesting the plaintiff of its real property and causing the damages alleged to have been sustained."

In Tripani v. Meraux, 184 La. 66, 165 So. 453, 456 (cited with approval in the Fourth Jefferson case, supra), this Court differentiated sections 8 and 9 of Article 165 of the Louisiana Code of Practice as follows:

"The word 'trespass,' as used in the ninth paragraph of article 165 of the Code of Practice, is used in its broad sense of committing any wrongful act that injures another, and not in the *technical sense of committing a trespass upon the property of another.* State ex rel. Morgan's La. & L. R. & S. S. Co. v. Judge, 33 La.Ann. 954, 955; Heirs of Gossin v. C. C. Williams et al., 36 La.Ann. 186, 187; St. Julien v. Morgan's La. & T. R. & S. S. Co., 39 La.Ann. 1063, 1064, 3 So. 280; Caldwell v. Vicksburg, S. & P. R. Co., 40 La.Ann. 753, 754, 5 So. 17. *In fact, the exception with regard to an action for damages for 'trespass,' in its technical sense, is provided for in the eighth paragraph of article 165 of the Code of Practice.* * * *" See also, White v. Lockhart, 229 La. 611, 86 So. 2d 397. (Italics ours.)

Even though defendants' exceptions were averred to be filed under Article 165(8) of the Louisiana Code of Practice, we cannot find from an examination of the record that the alleged trespass is a trespass in the strict technical sense of the word. There is no trespass *to* or *against* the Airport property itself, as in the Fourth Jefferson case, supra. Here, we have alleged injurious actions to plaintiff committed by defendants within the confines of the property. Plaintiff does not allege that its property will be damaged or desecrated by the alleged trespass, but that it will suffer the loss of revenues because of defendants' actions. Plaintiff is endeavoring to protect its rights under a contract.

Since the word "exclusive" cannot be read into Section 8 of Article 165 of the Code of Practice, before the word "cognizance"; and in view of the provisions of Section 9 of Article 165 of the Code of Practice; the Rathborne case, supra; and the other authorities herein-

above cited (which must be read, considered and construed together), we are of the opinion that this suit could have been filed either in the Parish of Orleans or in the Parish of Jefferson, and that it was properly brought in the Civil District Court for the Parish of Orleans.

For the reasons assigned, the judgment of the district court is reversed and set aside; the temporary restraining order herein issued on March 1, 1957, is reinstated; and, the cause is remanded to the district court for further proceedings in accordance with law.

HAWTHORNE, Justice (dissenting).

The trial judge found that plaintiff was only seeking a prohibitive injunction to restrain defendants, some of whom are residents of the Parish of Jefferson, from trespassing on plaintiff's airport in that parish. Accordingly he sustained defendants' plea to the jurisdiction because he was of the view that under Article 165(8) of the Code of Practice the venue was exclusively in Jefferson Parish. It is my opinion that the trial judge was correct in his findings and conclusion, all of which are set forth in his reasons for judgment.